PRECISION WALLS, INC., PLAINTIFF v. JONATHAN W. SERVIE, DEFENDANT

No. COA01-1120

(Filed 3 September 2002)

**1. Appeal and Error— appealability—non-competition agreement—injunction to enforce**

A preliminary injunction for plaintiff-employer in an action on a non-competition agreement was immediately appealable where the restriction effectively prohibited defendant from earning a living in North Carolina and South Carolina. A substantial right will be adversely affected if the preliminary injunction escapes immediate review.

**2. Employer and Employee— non-competition agreement—injunction to enforce—time of execution**

The trial court did not err by granting a preliminary injunction for plaintiff-employer in an action arising from a non-competition agreement where defendant contended that the agreement was not supported by valuable consideration because he signed it after he began work with no additional consideration, but there was evidence that the agreement was entered prior to, and as a condition of, defendant's employment with plaintiff.

**3. Employer and Employee— covenant not to compete—not unreasonable**

A covenant not to compete was not unreasonable in its time, territory or scope where it prohibited defendant employee from working for a direct competitor of plaintiff in North Carolina and South Carolina for a period of one year.

PRECISION WALLS, INC. v. SERVIE

[152 N.C. App. 630 (2002)]

### 4. Injunctions— security—temporary restraining order continued as preliminary injunction

Defendant could not argue on appeal that the trial court erred by not considering whether a bond or security was necessary to protect him when a temporary restraining order was continued as a preliminary injunction. The record was silent as to whether defendant made any argument before the trial court about whether the security given for the temporary restraining order was insufficient.

Appeal by defendant from order entered 20 June 2001 by Judge Narley Cashwell in Wake County Superior Court. Heard in the Court of Appeals 22 May 2002.

*Burns, Day & Presnell, P.A., by Daniel C. Higgins, for plaintiff-appellee.*

*Manning, Fulton & Skinner, P.A., by Judson A. Welborn, for defendant-appellant.*

CAMPBELL, Judge.

Jonathan W. Servie ("defendant") appeals from the trial court's order granting a preliminary injunction in favor of Precision Walls, Inc. ("plaintiff"). We affirm.

Plaintiff is a North Carolina corporation engaged in the business of manufacturing, selling, and installing interior and exterior wall systems. Plaintiff's business is headquartered in Raleigh, North Carolina. In addition to its office in Raleigh, plaintiff has offices in Charlotte, Greensboro, and Wilmington, North Carolina, as well as offices in South Carolina and Kentucky. Plaintiff does business in twelve states, including statewide operations in North Carolina and South Carolina. Plaintiff claims to possess various kinds of confidential and proprietary business information, including customer information, such as customer preferences and customer pricing arrangements, information on material and project costs, information on favorable negotiated pricing arrangements with suppliers, information on labor cost factors, profit margin information, and other information related to prices, terms and conditions upon which it bids and competes for work. Plaintiff's confidential and proprietary business information also includes information related to outstanding bids and proposals on projects for which contracts have yet to be awarded.

Plaintiff employed defendant on 27 October 1997 as an Estimator/Project Manager. As an Estimator, defendant was responsible for customer contact, calculating job costs and profits, developing accurate, complete and competitive project proposals, and preparing and submitting project bids on behalf of plaintiff. As a Project Manager, defendant was responsible for ordering materials, coordinating material deliveries, scheduling work forces and serving as liaison to the general contractor or owner on assigned projects. As a condition of his employment, and consistent with plaintiff's practice of protecting its confidential and proprietary information, defendant was required to execute a written "Non-Competition Agreement" ("non-competition agreement") which provided, *inter alia*, that

> 3.3 During the term of his employment by the Company and for the Period, Employee will not, directly or indirectly:
>
> (a) Solicit Business from, divert Business from, or attempt to convert to any Company competitor, any Customer,
>
> (b) Within the Territory, be engaged in the Business, or employed, concerned, or financially interested in any entity engaged in the Business; or
>
> (c) Solicit for employment or employ any Company Employee or otherwise induce any Company Employee to terminate his employment with the Company.

The non-competition agreement prohibited the conduct set forth above for a period of one year following defendant's termination of employment with plaintiff. The territory in which defendant was prohibited from directly engaging in plaintiff's business or working for a competitor engaged in plaintiff's business covered North Carolina and South Carolina. The duration of the covenant not to compete with plaintiff within North Carolina and South Carolina, found in subsection (b) above, automatically extended one day for each day defendant was in violation of the covenant.

The non-competition agreement also prohibited defendant from ever using, revealing, or disclosing any of plaintiff's confidential and proprietary information, without the prior written authorization of plaintiff. The agreement stated that this obligation would survive any future termination of the agreement.

On 18 May 2001, defendant advised plaintiff that he intended to resign, and on 22 May 2001, defendant informed plaintiff that he intended to work for Shields, Inc. ("Shields"), one of plaintiff's direct competitors. Defendant allegedly began working for Shields in Winston-Salem, North Carolina, in the same capacity in which he worked for plaintiff, on or about 24 May 2001.

On 31 May 2001, plaintiff filed a complaint alleging that defendant's employment with Shields was a violation of the non-competition agreement entered into between the parties. Plaintiff further alleged that "defendant has wrongfully misappropriated [plaintiff's] trade secrets and confidential and proprietary information in violation of N.C.G.S. §66-152 *et seq.*" Asserting that defendant's conduct in violation of the parties' agreement threatened irreparable harm and damage to plaintiff's ability to do business with its customers, plaintiff prayed for a temporary restraining order (TRO), preliminary injunction, and permanent injunction. Judge Stephens issued a TRO on 31 May 2001 prohibiting defendant from working in North Carolina or South Carolina for Shields, or any of plaintiff's other competitors, and from using, revealing, or disclosing any of plaintiff's trade secrets or confidential and proprietary business information. In connection with the TRO, plaintiff was required to post an $800.00 bond to secure defendant from any damages incurred were it later determined that the TRO was wrongfully issued.

By order entered 20 June 2001, Judge Narley Cashwell converted the TRO into a preliminary injunction. In so doing, the trial court determined that plaintiff had established a reasonable likelihood of prevailing on its claims that defendant had violated the non-competition agreement and that plaintiff would suffer irreparable injury if defendant were allowed to work for Shields or any other competitor, or if defendant were allowed to disclose plaintiff's confidential and proprietary business information. The order converting the TRO to a preliminary injunction is silent as to whether the $800.00 bond was carried forward to cover the preliminary injunction and/or whether plaintiff was required to post additional security prior to the entry of the preliminary injunction. In addition, the record on appeal does not indicate whether defendant presented argument to the trial court that the $800.00 bond was inadequate security, or whether the trial court considered the question of whether additional security should be required of plaintiff.

Defendant filed a motion to stay enforcement of the preliminary injunction, which was denied by the trial court on 6 July 2001.

Defendant then filed a Petition for Writ of Supersedeas and Motion for Temporary Stay with this Court on 13 July 2001. On 16 July 2001, an order allowing defendant's Motion for Temporary Stay was entered, and on 25 July 2001 this Court allowed defendant's Petition for Writ of Supersedeas. Plaintiff petitioned for review of these orders by writ of certiorari to the North Carolina Supreme Court, and the Supreme Court denied plaintiff's petition on 10 May 2002.[1]

[1] On appeal, defendant challenges the trial court's preliminary injunction. Defendant fails to present argument against that portion of the preliminary injunction which restrains him from using, revealing or disclosing to third parties any of plaintiff's trade secrets or confidential and proprietary business information. Thus, that portion of the preliminary injunction is not before us for review. We only review that portion of the preliminary injunction prohibiting defendant from directly engaging in plaintiff's business or working for a competitor engaged in plaintiff's business.

In *A.E.P. Industries v. McClure*, 308 N.C. 393, 302 S.E.2d 754 (1983), our Supreme Court addressed the appealability of preliminary injunctions as follows:

> A preliminary injunction is interlocutory in nature, issued *after notice and hearing*, which restrains a party pending final determination on the merits. G.S. § 1A-1, Rule 65. Pursuant to G.S. § 1-277 and G.S. § 7A-27, no appeal lies to an appellate court from an interlocutory order or ruling of a trial judge unless such order or ruling deprives the appellant of a substantial right which he would lose absent a review prior to final determination.

*Id.* at 400, 302 S.E.2d at 759. "Thus, the threshold question presented by a purported appeal from an order granting a preliminary injunction is whether the appellant has been deprived of any substantial right which might be lost should the order escape appellate review before final judgment." *State v. School*, 299 N.C. 351, 358, 261 S.E.2d 908, 913 (1980).

---

1. As a result of this Court's grant of defendant's motion for temporary stay and petition for writ of supersedeas, defendant has only been prohibited from competing against plaintiff from 31 May 2001 (the date the TRO was issued) until 16 July 2001 (the date this Court granted defendant's motion for temporary stay), a total of forty-seven (47) days. Since the covenant not to compete has a one-year time restriction, plaintiff has not gotten the benefit of the agreement. Thus, the dispute between plaintiff and defendant remains a live controversy and the issues raised in this appeal remain justiciable.

In the instant case, defendant has been deprived of a substantial right because the preliminary injunction prevents him from working for any company engaged in the business of manufacturing, selling, and installing interior and exterior wall systems, walls, or partitions in North Carolina and South Carolina. This restriction effectively prohibits defendant from earning a living and practicing his livelihood in North Carolina and South Carolina. Accordingly, we conclude that a substantial right of defendant, the right to earn a living and practice his livelihood, will be adversely affected if the instant preliminary injunction escapes immediate appellate review. *See Milner Airco, Inc. v. Morris*, 111 N.C. App. 866, 433 S.E.2d 811 (1993) (finding substantial right where injunction prevented defendants from working during season installing air-conditioning units); *Masterclean of North Carolina v. Guy*, 82 N.C. App. 45, 345 S.E.2d 692 (1986) (finding substantial right where injunction would prevent defendant from practicing his livelihood in five states).

**[2]** Concerning the issuance of a preliminary injunction, the Supreme Court has stated:

A preliminary injunction . . . is an extraordinary measure taken by a court to preserve the status quo of the parties during litigation. It will be issued only (1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation. *Waff Bros., Inc. v. Bank*, 289 N.C. 198, 221 S.E.2d 273; *Pruitt v. Williams*, 288 N.C. 368, 218 S.E.2d 348; *Conference v. Creech*, 256 N.C. 128, 123 S.E.2d 619.

*Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977) (emphasis in original); *accord Triangle Leasing Co. v. McMahon*, 327 N.C. 224, 227, 393 S.E.2d 855, 856-57 (1990).

In reviewing a trial court's grant of a preliminary injunction, "an appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself." *A.E.P. Industries*, 308 N.C. at 402, 302 S.E.2d at 760. However, while an appellate court is not bound by the findings or ruling of the lower court, there is a presumption that the lower court's decision was correct, and the burden is on the appellant to show error. *Conference v. Creech*, 256 N.C. 128, 140, 123 S.E.2d 619, 626-27 (1962). Thus, "a decision by the trial court to issue or deny an injunction will be upheld if there is ample com-

petent evidence to support the decision, even though the evidence may be conflicting and the appellate court could substitute its own findings." *Wrightsville Winds Homeowners' Assn. v. Miller*, 100 N.C. App. 531, 535, 397 S.E.2d 345, 346 (1990).

Finally, "we note that the findings of fact and other proceedings of the trial court which hears the application for a preliminary injunction are not binding at a trial on the merits." *Kaplan v. Prolife Action League of Greensboro*, 111 N.C. App. 1, 16, 431 S.E.2d 828, 835 (1993). "The same is true of our decision upon this appeal and our statement of the facts upon which our conclusion rests." *Bd. of Elders v. Jones*, 273 N.C. 174, 181, 159 S.E.2d 545, 551 (1968).

By two of his assignments of error, defendant contends that the trial court erred in determining that plaintiff had shown a likelihood of success on the merits of its case. Defendant failed to assign error to the trial court's determination that plaintiff was likely to sustain irreparable loss or injury if the injunction did not issue. Thus, this appeal only concerns the first prong of the test for reviewing a preliminary injunction—plaintiff's likelihood of prevailing on the merits.

In this State, a covenant not to compete is valid and enforceable if it is "(1) in writing; (2) reasonable as to terms, time, and territory; (3) made a part of the employment contract; (4) based on valuable consideration; and (5) not against public policy." *Triangle Leasing Co. v. McMahon*, 327 N.C. App. at 228, 393 S.E.2d at 857. *See also Whittaker General Medical Corp. v. Daniel*, 324 N.C. 523, 379 S.E.2d 824 (1989); *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 370 S.E.2d 375 (1988).

Defendant first contends that plaintiff cannot show a likelihood of success on the merits because the covenant not to compete was not supported by valuable consideration. Specifically, defendant contends that he signed the covenant not to compete seven to ten days after he was employed and that there was no additional consideration provided to support the covenant not to compete. We disagree with defendant's contention.

It is well established in North Carolina that "the promise of new employment is valuable consideration and will support an otherwise valid covenant not to compete contained in the initial employment contract." *Wilmar, Inc. v. Corsillo*, 24 N.C. App. 271, 273, 210 S.E.2d 427, 429 (1974); *accord Milner Airco*, 111 N.C. App. at 869, 433 S.E.2d

at 813. However, if an employment relationship already exists without a covenant not to compete, any such future covenant must be based upon new consideration. *Greene Co. v. Kelley*, 261 N.C. 166, 134 S.E.2d 166 (1964).

In the instant case, the evidence shows that the "Non-Competition Agreement" signed by defendant states that the parties entered into the agreement on 27 October 1997. In addition, the agreement addresses consideration as follows:

> 2. **Consideration**. The consideration to the Employee for this Agreement is his employment by the Company as an Estimator/Project Manager effective on or about October 27, 1997. The Employee acknowledges that this Agreement was entered into as an express condition of his employment by the Company and was entered into contemporaneously with commencement of that employment.

The unambiguous language of the non-competition agreement provides the best evidence of when the parties entered into it. Further, the affidavits of Gary Roth, Executive Vice President and Chief Operating Officer of Precision Walls, and Tim Nutt, Precision Walls employee who witnessed defendant's signature on the non-competition agreement, corroborate that the agreement was entered into on 27 October 1997 prior to, and as a condition of, defendant's employment with plaintiff. This evidence contradicts defendant's assertion that he signed the covenant not to compete some seven to ten days after beginning his employment with plaintiff. We find this evidence sufficient to show the requisite likelihood that plaintiff will be able to show that the covenant to compete was based on valuable consideration. Thus, defendant's first assignment of error is overruled.

[3] Defendant next contends that plaintiff cannot show a likelihood of success on the merits because the covenant not to compete is unreasonable as to time, territory, and the scope of activity prohibited. We again disagree.

In evaluating the reasonableness of time and territory restrictions, the two elements must be considered in tandem because the two requirements are not independent and unrelated. *Farr Associates, Inc. v. Baskin*, 138 N.C. App. 276, 280, 530 S.E.2d 878, 881 (2000). "Although either the time or the territory restriction, standing alone, may be reasonable, the combined effect of the two may be unreasonable." *Id.* "A longer period of time is ac-

ceptable where the geographic restriction is relatively small, and *vice versa. Id.* (citing *Jewel Box Stores v. Morrow,* 272 N.C. 659, 158 S.E.2d 840 (1968)).

In the instant case, the one year time restriction is well within the established parameters for covenants not to compete. *See Enterprises, Inc. v. Heim,* 276 N.C. 475, 173 S.E.2d 316 (1970) (upholding a nationwide two year restriction); *Associates, Inc. v. Taylor,* 29 N.C. App. 679, 225 S.E.2d 602 (1976) (upholding a multi-state two year restriction). In determining the overall reasonableness of the covenant not to compete, we evaluate the territorial restriction in light of the relatively short duration of the time restriction.

In evaluating the reasonableness of the territorial restriction in a covenant not to compete, this Court has focused on the following six factors: (1) the area or scope of the restriction; (2) the area assigned to the employee; (3) the area in which the employee actually worked; (4) the area in which the employer operated; (5) the nature of the business involved; and (6) the nature of the employee's duty and knowledge of the employer's business operation. *Hartman v. W. H. Odell and Assoc., Inc.,* 117 N.C. App. 307, 312, 450 S.E.2d 912, 917 (1994). The scope of the territorial restriction must not be any wider than is necessary to protect the employer's reasonable business interests. *Triangle Leasing Co.,* 327 N.C. at 229, 393 S.E.2d at 857.

Here, the preliminary injunction only restricts defendant from working in two of the twelve states in which plaintiff conducts business. Although defendant only worked out of plaintiff's Greensboro office, he was aware of information affecting business in both North Carolina and South Carolina, such as pricing arrangements with suppliers, labor costs, and profit margins. By affidavit, Bruce Wolfe, branch manager for plaintiff, stated that he was informed that one of plaintiff's subcontractors had been contacted by defendant on 24 May 2001, defendant's first day working for Shields, about performing subcontract work for Shields. In addition, the record shows that defendant's position with Shields was almost identical to his job with plaintiff; defendant was an Estimator/Project Manager for plaintiff, while defendant stated in his affidavit that he would "estimate jobs and will be a project manager" for Shields. Accordingly, we conclude that it is within plaintiff's legitimate business interest to prohibit defendant from working in an identical position with a competing business in North Carolina and South Carolina. Thus, we hold that the time and territory restrictions in the covenant not to compete are reasonable.

**PRECISION WALLS, INC. v. SERVIE**

[152 N.C. App. 630 (2002)]

Defendant further argues that the scope of the activity prohibited by the covenant not to compete is unreasonable because it prevents him from working in plaintiff's business in any capacity, not just as an Estimator/Project Manager. However, we conclude that defendant would not be less likely to disclose the information and knowledge garnered from his employment with plaintiff if he worked for one of plaintiff's competitors in a position different from the one in which he worked for plaintiff. If defendant's new employer asked him about information he gained while working for plaintiff, defendant would likely feel the same pressure to disclose the information. Thus, plaintiff's legitimate business interest allows the covenant not to compete to prohibit employment of any kind by defendant with a direct competitor.

**[4]** By his final assignment of error, defendant contends that the trial court erred in not considering whether a bond or security was necessary to protect the defendant, thus rendering the preliminary injunction defective as a matter of law.

N.C. R. Civ. P. 65(c) provides in pertinent part:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, *in such sum as the judge deems proper*, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

N.C. R. Civ. P. 65(c) (2001) (emphasis added).

In the instant case, the record shows that Judge Stephens required an $800.00 security bond in connection with the issuance of the temporary restraining order. This was in compliance with N.C. R. Civ. P. 65(c). It was not necessary, if upon the hearing to show cause the trial court continued the temporary restraining order as a preliminary injunction pending final determination at trial, for the trial court to require a new security bond or consider the adequacy of the one posted, "unless for some reason and upon proper suggestion, it should be made to appear that the bond already given was insufficient." *Preiss v. Cohen,* 112 N.C. 278, 283, 17 S.E. 520, 521 (1893). The record on appeal is silent as to whether defendant made any argument that the security was insufficient and needed to be increased. It was defendant's duty to bring forward a record on appeal sufficient to show that he had contested the amount of security at the hearing to show cause. Having failed to do so, defendant cannot advance such

argument on appeal. Accordingly, defendant's final assignment of error is overruled.

For the foregoing reasons, the trial court's order granting a preliminary injunction in favor of plaintiff is affirmed.

Affirmed.

Judges WYNN and THOMAS concur.