NO. COA13-297

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

COPYPRO, INC.,
        Plaintiff

        v.

Pitt County
No. 12 CVS 2887

JOSEPH EDWARD MUSGROVE,
        Defendant

Appeal by defendant from order entered 19 December 2012 by Judge Thomas D. Haigwood in Pitt County Superior Court. Heard in the Court of Appeals 12 September 2013.

> *White & Allen, P.A., by David J. Fillippeli, Jr., for Plaintiff.*
>
> *Cranfill Sumner & Hartzog LLP, by Benton L. Toups and Susie E. Sewell, for Defendant.*

ERVIN, Judge.

Defendant Joseph Edward Musgrove appeals from an order granting a preliminary injunction sought by Plaintiff CopyPro, Inc., prohibiting Defendant from working in any capacity for a competitor. On appeal, Defendant contends that Plaintiff failed to demonstrate that it would likely succeed on the merits of its claim or that it would suffer harm in the absence of the issuance of the injunction. After careful consideration of Defendant's challenges to the trial court's order in light of the record and

the applicable law, we conclude that the trial court's order should be reversed, in part.[1]

## I. Factual Background

## A. Substantive Facts

Plaintiff has been engaged in the selling, maintaining and leasing of office equipment systems for the past forty-two years, with ninety percent of Plaintiff's business being derived from the leasing of office equipment. Almost all of Plaintiff's leases are for a term of either 36, 48, or 60 months. All of Plaintiff's customers are located in various counties in eastern North Carolina.

Sales personnel working for Plaintiff are provided with access to pricing and customer information in four principal ways. First, each sales representative has access to a company database that contains important information relating to the customers within the territory assigned to that employee, with the information contained in that database consisting of material such

---

[1]As will be discussed in more detail below, the trial court's order enforced a contractual provision that prohibited Defendant from disclosing or making use of certain specified information and a separate contractual provision that prohibited Defendant from working for or having any connection with a competitor. On appeal, Defendant has challenged the validity of the noncompetition agreement, but has made no challenge to the trial court's decision to enforce the nondisclosure agreement. As a result, we have no basis for overturning the trial court's decision to enforce the nondisclosure agreement and leave that part of the trial court's order undisturbed.

as customer names, phone numbers, "decision-makers'" names, and lease expiration reports. Secondly, Plaintiff's sales representatives receive a weekly spreadsheet that shows order logs for the entire company organized on a territory by territory basis. The weekly spreadsheets list customer names, the date and amount of each sale, and the nature of the equipment sold. However, the weekly spreadsheet does not provide information concerning the length of specific leases. Thirdly, Plaintiff's sales persons have access to an electronic database known as Recollect, which contains copies of each contract that Plaintiff has entered into with any customer. Finally, pricing changes are communicated to sales representatives using a revised electronic price book that is sent out each time such a change takes place.

On 10 November 2009, Defendant entered into an employment contract with Plaintiff under which he agreed to work for Plaintiff as a salesperson. As a condition of his employment, Defendant was required to sign a nondisclosure agreement and a covenant not to compete. In the nondisclosure agreement, Defendant agreed to refrain from disclosing or making any use of any of Plaintiff's customer lists during or after his employment except to the extent that Defendant's activities benefitted Plaintiff. In the noncompetition agreement, Defendant agreed that he would not

engage in certain activities for a period of three years after the end of his employment with Plaintiff.

During the time that he worked for Plaintiff, Defendant was assigned responsibility for accounts within Pender and Onslow Counties. In carrying out his job responsibilities, Defendant was responsible for servicing the accounts that were assigned to him and obtaining new accounts. Although Plaintiff did business in 33 eastern North Carolina counties, Defendant focused his efforts on his assigned area and only contacted potential customers outside that area on a few occasions, with such extra-territorial contacts including customers in Craven, Duplin, New Hanover, and Sampson Counties and an old hunting friend in Carteret County. As a result, 95% to 97% of Defendant's time was spent working with customers or potential customers in Onslow and Pender Counties.

Defendant remained employed by Plaintiff until his resignation on 28 August 2012. Defendant decided to leave Plaintiff's employment after learning that he was no longer Plaintiff's sole service representative in Onslow County, which made up the majority of his assigned territory. A few days after he resigned from his employment with Plaintiff, Defendant went to work for Coastal Document Systems, an entity which competes with Plaintiff and operates solely in Brunswick, Columbus, and New Hanover Counties. After beginning to work for Coastal, Defendant

refrained from calling on customers in Onslow or Pender Counties. In fact, Coastal officials informed Defendant that his employment would be terminated if he contacted any of Plaintiff's customers or conducted business within the territory that had been assigned to him during his employment with Plaintiff. However, Plaintiff learned in late August that Defendant was working for Coastal when one of its sales representatives visited a potential customer, learned that Coastal had provided the potential customer with a quote, and saw that one of Defendant's business cards was attached to Coastal's proposal.

## B. Procedural Facts

On 29 October 2012, Plaintiff filed a complaint in which it alleged that Defendant had breached the nondisclosure and noncompetition agreements and sought the issuance of a temporary restraining order, a preliminary injunction, a permanent injunction and an award of attorneys' fees. After conducting a hearing with respect to Plaintiff's request for the issuance of a preliminary injunction on 15 November 2012, the trial court entered an order on 19 December 2012 granting Plaintiff's motion and enjoining Defendant for violating the nondisclosure and noncompetition provisions of his contract with Plaintiff. Defendant noted an appeal to this Court from the trial court's order.

## II. Legal Analysis

## A. Appealability

"A preliminary injunction is interlocutory in nature," which means that an order issuing a preliminary injunction "cannot be appealed prior to [a] final judgment absent a showing that the appellant has been deprived of a substantial right which will be lost should the order escape appellate review before final judgment." *Clark v. Craven Regional Medical Authority*, 326 N.C. 15, 23, 387 S.E.2d 168, 173 (1990) (internal quotation marks omitted) (quoting *State ex rel. Edmisten v. Fayetteville Street Christian School*, 299 N.C. 351, 358, 261 S.E.2d 908, 913, *cert. denied*, 449 U.S. 807, 101 S. Ct. 55, 66 L. Ed. 2d 11 (1980)). However, when the entry of an order granting a request for the issuance of a preliminary injunction has the effect of destroying a party's livelihood, the order in question affects a substantial right and is, for that reason, subject to immediate appellate review. *See Precision Walls, Inc. v. Servie*, 152 N.C. App. 630, 635, 568 S.E.2d 267, 271 (2002). As a result of the fact that the challenged order prohibits Defendant from working for Coastal for a period of three years, we conclude that his appeal from the trial court's order is properly before us.

## B. Standard of Review

"[O]n appeal from an order of superior court granting or denying a preliminary injunction, an appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself." *A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 402, 302 S.E.2d 754, 760 (1983). As a general proposition, however, "a decision by the trial court to issue or deny an injunction will be upheld if there is ample competent evidence to support the decision, even though the evidence may be conflicting and the appellate court could substitute its own findings." *Wrightsville Winds Townhouse Homeowners' Ass'n v. Miller*, 100 N.C. App. 531, 535, 397 S.E.2d 345, 346 (1990) (citing *Robins & Weill v. Mason*, 70 N.C. App. 537, 540, 320 S.E.2d 693, 696, *disc. review denied*, 312 N.C. 495, 322 S.E.2d 559 (1984)), *disc. review denied*, 328 N.C. 275, 400 S.E.2d 463 (1991). In light of that fact, "'there is a presumption that the judgment entered below is correct, and the burden is upon appellant to . . . show error.'" *Western Conference of Original Free Will Baptists of N.C. v. Creech*, 256 N.C. 128, 140, 123 S.E.2d 619, 627 (1962) (quoting *Lance v. Cogdill*, 238 N.C. 500, 504, 78 S.E.2d 319, 322 (1953)). As a result, we will uphold a trial court's decision to issue a preliminary injunction "(1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a

plaintiff is likely to sustain irreparable loss unless the injunction is issued." *Ridge Cmty. Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977). In view of the fact that the evidence received at the hearing held before the trial court was essentially undisputed and reflected in the trial court's findings of fact, the ultimate question for our consideration is whether the trial court correctly applied the applicable law to the undisputed record evidence, a determination that requires us to utilize a *de novo* standard of review. *Robins & Weill*, 70 N.C. App. at 540, 320 S.E.2d at 696.

### C. Validity of Noncompetition Agreement

In his brief, Defendant contends that the trial court erroneously granted the requested preliminary injunction on the grounds that Plaintiff failed to establish that it was likely to succeed on the merits of its underlying breach of contract claim. According to Defendant, the evidentiary materials contained in the record demonstrate that the noncompetition agreement contained in his employment contract prohibited an unreasonably wide range of activities and should, for that reason, have been deemed unenforceable. Defendant's argument has merit.

A noncompetition agreement contained in or associated with an employment agreement is subject to careful scrutiny. *Keith v. Day*, 81 N.C. App. 185, 193, 343 S.E.2d 562, 567 (1986), *disc.*

*review improvidently granted*, 320 N.C. 629, 359 S.E.2d 466 (1987). A valid noncompetition agreement entered into in the employer-employee context must be "(1) in writing; (2) reasonable as to time and territory; (3) made a part of the employment contract; (4) based on valuable consideration; and (5) designed to protect a legitimate business interest of the employer." *Young v. Mastrom, Inc.*, 99 N.C. App. 120, 122-23, 392 S.E.2d 446, 448 (citing *A.E.P. Indus.*, 308 N.C. at 403-04, 302 S.E.2d at 760-61), *disc. review denied*, 327 N.C. 488, 397 S.E.2d 239 (1990). On the one hand, an employer has a right "'to protect, by reasonable contract with [its] employee, the unique assets of [its] business, a knowledge of which is acquired during the employment and by reason of it,'" with these unique assets having "been defined as 'customer contacts' and 'confidential information.'" *Elec. S., Inc. v. Lewis*, 96 N.C. App. 160, 165-66, 385 S.E.2d 352, 355 (1989) (alterations in original) (quoting *Kadis v. Britt*, 224 N.C. 154, 159, 29 S.E.2d 543, 546 (1944), and citing *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 653, 657, 370 S.E.2d 375, 381, 384 (1988)), *disc. review denied*, 326 N.C. 595, 393 S.E.2d 876 (1990). On the other hand, an enforceable noncompetition agreement must "not impose unreasonable hardship on the [employee]," *Kadis*, 224 N.C. at 161, 29 S.E.2d at 547, and should not, for that reason, be "broader than necessary to protect its legitimate business

interest." *Hartman v. W.H. Odell & Assocs.*, 117 N.C. App. 307, 316, 450 S.E.2d 912, 919 (1994), *disc. review denied*, 339 N.C. 612, 454 S.E.2d 251 (1995). Although the record before us in this case clearly establishes that the noncompetition agreement at issue here was in writing, was made part of the employment contract between Plaintiff and Defendant, and was supported by valuable consideration, we conclude that the noncompetition agreement at issue prohibits Defendant from engaging in a much broader array of activities than is necessary to protect Plaintiff's legitimate business interests.[2]

The noncompetition agreement between the parties provides that:

> [f]or a period of three (3) years from the date of the termination of his/her employment, the Employee will not, within the geographical limits of the Counties of Beaufort, Bertie, Bladen, Brunswick, Camden, Carteret, Chowan,

---

[2]In addition to contending that the noncompetition agreement was broader than necessary to protect Plaintiff's legitimate business interests, Defendant challenges its temporal and territorial restraints as well. Although Plaintiff has raised serious questions about the validity of these temporal and territorial restraints, which prohibit Defendant from working in counties outside his assigned territory for a period of three years, we need not address Defendant's challenges to these provisions given our decision to reverse the trial court's order on the grounds that the noncompetition agreement between the parties prohibits a broader array of activities than is necessary to protect Plaintiff's legitimate business interests. For that same reason, we decline to address Defendant's specific objections concerning the extent to which Plaintiff demonstrated that it would suffer irreparable harm absent the issuance of a preliminary injunction.

> Columbus, Craven, Currituck, Dare, Duplin, Edgecombe, Gates, Greene, Halifax, Hertford, Hyde, Jones, Lenoir, Martin, Nash, New Hanover, Northampton, Onslow, Pamlico, Pasquotank, Pender, Pitt, Tyrrell, Washington, Wayne, Wilson or within a sixty (60) mile radius of Greenville and Wilmington, directly or indirectly, own, manage, operate, join, control, be employed or participate in the ownership, management, operation or control of, or be connected in any manner with any business of the type and character of the business engaged in by the Employer at the time of such termination.

As our decisions reflect, we have held on numerous occasions that covenants restricting an employee from working in a capacity unrelated to that in which he or she worked for the employer are generally overbroad and unenforceable. *E.g., Henley Paper Co. v. McAllister*, 253 N.C. 529, 534-35 117 S.E.2d 431, 434 (1960) (holding that a noncompetition agreement was unenforceable on the grounds, in part, that it precluded the defendant from engaging in activities unrelated to those inherent in the sales position that he had occupied while employed by the plaintiff); *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 656-57, 670 S.E.2d 321, 327-28 (2009) (holding that a noncompetition agreement that prohibited an employee from working for a competing business even if the employment duties assigned to that employee by the competing business were not similar to the duties that the employee had performed while working for the plaintiff was unenforceable); *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 508-09, 606 S.E.2d

359, 362-63 (2004) (alterations in original) (holding that a covenant that prohibited an employee from "own[ing], manag[ing], be[ing] employed by or otherwise participat[ing] in, directly or indirectly, any business similar to" the employer's business was overly broad and unenforceable); *Hartman*, 117 N.C. App. at 317, 450 S.E.2d at 920 (holding that a noncompetition agreement was unenforceable on the grounds that the agreement in question prohibited the plaintiff from having any "association whatsoever with any business that provides actuarial services"). We have even held similar restrictions to be unenforceable outside the employment contract context. *E.g., Outdoor Lighting Perspectives Franchising v. Harders*, __ N.C. App. __, __, 747 S.E.2d 256, 267-68 (2013) (holding that a noncompetition agreement contained in a franchise agreement was unenforceable because it prevented the franchisee from associating with or owning a business in competition with any of the franchisor's affiliates regardless of the extent to which the franchisor's affiliates engaged in a business similar to that in which the franchisee was currently employed). As a result, in the absence of unusual factors tending to justify such a restriction, the appellate courts in this jurisdiction have typically refused to allow the enforcement of noncompetition agreements precluding an employee from engaging in

activities that have no bearing on the employer's business interests.

A careful reading of the relevant contractual language at issue here establishes, as confirmed by the testimony of David Jones, Plaintiff's chief of operations, that the noncompetition agreement at issue here was intended to and actually did prohibit Defendant from working for Coastal in any capacity, including as a custodian. As the cases summarized above clearly establish, such overly broad restrictions are generally not enforceable in the employer-employee context on the grounds that the scope of the restrictions contained in such agreements far exceeds those necessary to protect an employer's legitimate business interests. *E.g., Hartman*, 117 N.C. App. at 317, 450 S.E.2d at 920 (holding that a noncompetition agreement that would prevent a non-custodial "plaintiff from working as a custodian for any 'entity' which provides 'actuarial services'" was unenforceable). As a result, we conclude that the noncompetition agreement at issue here is unenforceable.[3]

---

[3]The ordering paragraphs in the trial court's order do not contain the "in any manner" language found in the noncompetition agreement. Although Defendant contends that this omission represents an implicit attempt to "blue pencil" the noncompetition agreement in order to render it enforceable, we are inclined to agree with Plaintiff that the omission of this language from the trial court's order simply reflects the nature of Defendant's activities on behalf of Coastal rather than a "blue penciling" exercise. However, to the extent that this limitation on the scope

In seeking to persuade us to reach a different result, Plaintiff places principal reliance upon our decision in *Precision Walls*. In *Precision Walls*, the defendant worked as one of the plaintiff's project managers, having responsibility for customer contacts, calculating job costs, projecting bids, ordering materials, and engaging in other similar activities. *Precision Walls*, 152 N.C. App. at 632, 568 S.E.2d at 269. After signing a covenant that prevented him from being employed in any capacity with a competing business for a period of one year, the defendant went to work for a competitor. *Id.* at 632-33, 568 S.E.2d at 269-70. In holding that the noncompetition agreement at issue in that case was enforceable against a challenge predicated on the theory that it prohibited an unduly broad array of activities, we stated:

---

of the trial court's order did represent an attempt to "blue pencil" the noncompetition agreement in order to make it enforceable, that effort must be deemed unavailing given that the exclusion of the omitted language for the reason suggested by Defendant would amount to an effort to rewrite the noncompetition agreement rather than a refusal to enforce a severable provision. *E.g., Welcome Wagon Int'l, Inc. v. Pender*, 255 N.C. 244, 248, 120 S.E.2d 739, 742 (1961) (stating that, "where, as here, the parties have made divisions of the territory, a court of equity will take notice of the divisions the parties themselves have made, and enforce the restrictions in the territorial divisions deemed reasonable and refuse to enforce them in the divisions deemed unreasonable"); *Whittaker Gen. Med. Corp. v. Daniel*, 324 N.C. 523, 528, 379 S.E.2d 824, 828 (1989) (stating that, "[t]he courts will not rewrite a contract if it is too broad but will simply not enforce it," and that, "[i]f the contract is separable, however, and one part is reasonable, the courts will enforce the reasonable provision").

> that defendant would not be less likely to disclose the information and knowledge garnered from his employment with plaintiff if he worked for one of plaintiff's competitors in a position different from the one in which he worked for plaintiff. If defendant's new employer asked him about information he gained while working for plaintiff, defendant would likely feel the same pressure to disclose the information. Thus, plaintiff's legitimate business interest allows the covenant not to compete to prohibit employment of any kind by defendant with a direct competitor.

*Id.* at 639, 568 S.E.2d at 273. However, we do not believe that *Precision Walls* is controlling in this case.

Aside from the fact that the restriction at issue in *Precision Walls* was to remain in effect for only one year while the noncompetition agreement at issue here will remain in effect for three years, the present record contains no indication that Defendant ever had either the same level of responsibility or the same level of access to competitively sensitive information as the defendant whose conduct was at issue in *Precision Walls*. Simply put, the record developed in this case, unlike the record developed in *Precision Walls*, contains no evidence that Defendant had the responsibility for developing client-specific pricing proposals or adjusting prices for competitive reasons or that Defendant was involved in the development and operation of his employer's bidding or pricing strategies. Although Plaintiff contended in the court below that Defendant might share vital information even if he were

hired by a competing business as a custodian, nothing in the present record indicates that Defendant actually possessed sufficiently important information to render him a competitive threat regardless of the position he held with a subsequent employer. Although our opinion in *Precision Walls* indicates that the defendant possessed all of the information about which the employer was concerned, Defendant denied having taken any of Plaintiff's materials with him when he left its employment, claimed that he had never accessed the Recollect system during the entire time that he worked for Plaintiff, stated that his failure to access the Recollect system prevented him from knowing the identity of Plaintiff's customers, and testified that, in the event that he determined that a potential customer upon whom he called while working for Coastal was currently receiving service from Plaintiff, his standard reply was to describe Plaintiff as a "fine company" and depart without leaving a business card.

In order to affirm the trial court's order in this case, we would have to hold that an employer's decision to merely make information available to employees, without more, would support the enforcement of a noncompetition agreement like that at issue here. Such a result would be a substantial expansion of our decision in *Precision Walls*, and would be inconsistent with decisions such as *Henley Paper*, *Medical Staffing Network*,

*VisionAIR*, and *Hartman*.[4]  Although Plaintiff would have clearly had the right to seek "to prohibit defendant from working in an identical position with a competing business," *id.* at 638, 568 S.E.2d at 273, its decision to draft a much broader noncompetition agreement that prohibited Defendant from engaging in a wide array of activities which posed no competitive threat to Plaintiff and which involved an employee who had very different responsibilities than those at issue in *Precision Walls* causes us to conclude that *Precision Walls* does not control the outcome in this case.

Aside from *Precision Walls*, Plaintiff has cited no authority in support of its contention that a noncompetition agreement that precludes an employee from working for a competitor in a capacity unrelated to the employer's competitive position protects a legitimate business interest.  In light of the absence of any controlling authority tending to suggest that restrictions such as those at issue here are appropriate in this case and in light of the fact that, contrary to many prior decisions of the Supreme Court and this Court, the noncompetition agreement at issue here

---

[4]Although Plaintiff asserts that Defendant possessed information that would allow him to approach Plaintiff's customers when their existing leases were about to expire, this argument is not valid unless one assumes that Defendant actually accessed the Recollect system or concludes that the fact that Defendant did, at one point, have access to the information contained in the Recollect system is sufficient to support a decision to uphold the enforceability of the noncompetition agreement at issue here, a step that we are unwilling to take.

precludes Defendant from working for a competitor in a manner which does not affect the employer's legitimate business interests, we hold that the noncompetition agreement at issue here is much broader than is necessary to protect Plaintiff's legitimate business interests and is, for that reason, unenforceable. As a result, the trial court erred by issuing a preliminary injunction enforcing the noncompetition provisions of the employment agreement between Plaintiff and Defendant.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that, while the trial court's decision to enforce the nondisclosure agreement should be affirmed, the trial court erred by concluding that the noncompetition agreement at issue here was enforceable and by issuing a preliminary injunction enforcing that agreement. As a result, the trial court's order should be, and hereby is, affirmed in part and reversed in part.

AFFIRMED IN PART; REVERSED IN PART.

Judges ROBERT N. HUNTER, JR. and DAVIS concur.