NO. COA13-1427

NORTH CAROLINA COURT OF APPEALS

Filed: 19 August 2014

NORTHERN STAR MANAGEMENT OF
AMERICA, LLC,
    Plaintiff,

v.

MARK SEDLACEK,
    Defendant.

Guilford County
No. 13 CVS 7584

Appeal by Defendant from order entered 4 September 2013 by Judge David L. Hall in Guilford County Superior Court. Heard in the Court of Appeals 24 April 2014.

> *Nelson Levine de Luca & Hamilton, by David G. Harris II, David L. Brown, and John I. Malone, Jr., for Plaintiff.*
>
> *Carruthers & Roth, P.A., by Mark K. York and J. Patrick Haywood, for Defendant.*

DILLON, Judge.

Mark Sedlacek appeals from the trial court's order enjoining him from violating non-compete provisions contained in an agreement he entered into with his former employer, Northern Star Management of America, LLC ("Northern Star"). For the following reasons, we vacate and remand for further proceedings consistent with this opinion.

I. Factual & Procedural Background

Northern Star is a company which specializes in the design, development and administration of insurance products. Its principal place of business is located in North Carolina, though its parent company, Northern Star Management, Inc., is based in New Jersey. Mr. Sedlacek, a North Carolina resident, has worked in the insurance industry since 1982 and specializes in "creating and managing insurance products for and on behalf of commercial carriers related to collateral recovery (repossession), automobile transporters, and towing."

In early 2010, Mr. Sedlacek was an officer and part-owner of AEON Insurance Group, Inc., when AEON was purchased by Northern Star. Mr. Sedlacek thereafter worked for Northern Star, on and off, until June 2013. During this time, Mr. Sedlacek and Northern Star entered into three agreements, each of which contained non-compete and confidentiality provisions (hereinafter referred to generally as the "covenants"), whereby Mr. Sedlacek agreed to refrain from engaging in certain activities in the insurance business within certain territories for a specified period of time.

The parties entered into the first two agreements (collectively, the "2010 Agreements") around the time of Northern Star's purchase of AEON, and each included a provision

designating New Jersey law as governing the agreements. Mr. Sedlacek signed the first agreement (the "Asset Purchase Agreement") as an owner of AEON, agreeing to sell AEON's assets and liabilities to Northern Star and to refrain from using Northern Star's confidential information and from engaging in certain activities in the insurance business with Northern Star "worldwide." In the second agreement (the "Consulting Agreement"), Mr. Sedlacek agreed to work as a consultant for Northern Star and further agreed not to engage in certain activities in the insurance business and not to use Northern Star's confidential information outside his relationship with Northern Star for a certain period in the United States and its territories.

The parties entered into the third agreement (the "Severance Agreement") in February 2013, when Mr. Sedlacek temporarily separated from Northern Star. Pursuant to this agreement, Mr. Sedlacek accepted a severance payment and acknowledged that his obligations under the prior agreements would continue in accordance with their terms. The Severance Agreement contained a provision designating North Carolina law as governing that agreement. Mr. Sedlacek was rehired by Northern Star the day after the parties executed the Severance

Agreement and continued his employment with Northern Star for approximately four additional months before resigning on 23 June 2013.

Northern Star commenced the present action in August 2013, within two months of Mr. Sedlacek's resignation, alleging that Mr. Sedlacek had engaged in competitive activities in violation of the covenants contained in the 2010 Agreements. Northern Star requested an injunction proscribing Mr. Sedlacek from further violation of the covenants.

At the preliminary injunction hearing, Northern Star introduced evidence that Mr. Sedlacek had violated the covenants. Mr. Sedlacek asserted that the covenants imposed overly broad restrictions, rendering them unenforceable under North Carolina law. Northern Star countered that New Jersey law governed and that, accordingly, even if the covenants were overly broad as written, the court possessed the authority to modify the covenants to bring them into compliance with New Jersey law.

By order entered 4 September 2013, the trial court concluded that New Jersey law applied with respect to its interpretation of the covenants; granted Northern Star's request for a preliminary injunction; and directed that Mr. Sedlacek

refrain from further violation of the covenants contained in the 2010 Consulting Agreement. The trial court also indicated in its order that Northern Star had presented sufficient evidence to establish that it would likely prevail on the merits of its claims against Mr. Sedlacek and, moreover, that Northern Star would likely sustain irreparable loss absent the injunction. From this order, Mr. Sedlacek appeals.

## II. Jurisdiction

The trial court's preliminary injunction order is interlocutory in nature, in that it "does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950). This Court has jurisdiction over an interlocutory appeal where the order "'affects some substantial right claimed by [the] appellant and will work injury to him if not corrected before an appeal from the final judgment.'" *Stanford v. Paris*, 364 N.C. 306, 311, 698 S.E.2d 37, 40 (2010) (citation omitted). We have stated that "[i]n cases involving an alleged breach of a non-competition agreement[,] North Carolina appellate courts have routinely reviewed interlocutory court orders both granting and denying preliminary injunctions . . . ." *QSP, Inc. v. Hair*,

152 N.C. App. 174, 175, 566 S.E.2d 851, 852 (2002); *see also Copypro, Inc. v. Musgrove*, __ N.C. App. __, __, 754 S.E.2d 188, 191 (2014) ("[W]hen the entry of an order granting a request for the issuance of a preliminary injunction has the effect of destroying a party's livelihood, the order in question affects a substantial right and is, for that reason, subject to immediate appellate review."). We accordingly proceed to address the merits of Mr. Sedlacek's appeal.

### III. Standard of Review

In order to obtain a preliminary injunction, the movant must demonstrate (1) that it will likely succeed on the merits of its case; and (2) that it will likely sustain irreparable harm absent the injunction. *Ridge Cmty. Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977). Mr. Sedlacek does not challenge any of the trial court's factual findings; rather, he takes issue with the trial court's legal conclusions, which this Court reviews *de novo* on appeal. *Copypro, Inc.*, __ N.C. App. at __, 754 S.E.2d at 191 (stating that where "the ultimate question for our consideration is whether the trial court correctly applied the applicable law to the undisputed record evidence, [we] utilize a *de novo* standard of review").

## IV.  Analysis

Mr. Sedlacek raises three primary contentions on appeal: (1) the trial court erred in applying New Jersey law instead of North Carolina law; (2) the trial court erred in concluding that the covenants contained in the Asset Purchase Agreement apply; and (3) the trial court erred in concluding that the terms of the covenants were valid and enforceable as written.  Upon careful review of the record and the parties' arguments, we conclude that the trial court did not err in applying New Jersey law and in determining that the Asset Purchase Agreement was applicable.  We further conclude, however, that in applying New Jersey law the trial court should have determined whether the *scope* of the covenants was overly broad and, if so, should have appropriately narrowed the restrictions and tailored the preliminary injunction accordingly.  Thus, for the reasons set forth below, we vacate the trial court's order and remand to the trial court for entry of findings and conclusions concerning the scope of the preliminary injunction consistent with this opinion.

## A. Choice of Law

Mr. Sedlacek argues that the trial court incorrectly applied New Jersey law, in that the choice-of-law provision in

the Severance Agreement – which designates North Carolina law as governing that agreement – effectively supersedes the choice-of-law provisions in the Asset Purchase Agreement and the Consulting Agreement, both of which designate New Jersey law as governing.

"Whenever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties at the moment of its execution." *Lane v. Scarborough*, 284 N.C. 407, 409-10, 200 S.E.2d 622, 624 (1973). The intent of the parties "is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Gould Morris Elec. Co. v. Atl. Fire Ins. Co.*, 229 N.C. 518, 520, 50 S.E.2d 295, 297 (1948). Where "a contract is 'in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact,' the intention of the parties is a question of law[.]" *Vue-Charlotte, LLC v. Sherman*, __ N.C. App. __, __, 719 S.E.2d 161, 163 (2011) (citation omitted).

Mr. Sedlacek relies on paragraph 16 of the Severance Agreement which provides as follows:

> 16. <u>Governing Law</u>. This Agreement and any amendments hereof shall be governed and

> interpreted in accordance with the laws (both substantive and procedural) of the State of North Carolina and without regard to any conflict of laws provisions. Each of the parties to this Agreement irrevocably consents to the exclusive jurisdiction and venue of any state or federal court of the State of North Carolina permitted by law to have jurisdiction over any and all actions between or among any of the parties, whether arising hereunder or otherwise, except as otherwise directed by such court. . . .

Mr. Sedlacek asserts in his brief that this provision "clearly states that North Carolina law will apply substantively and procedurally to any and all actions between the parties, whether arising under the Severance Agreement or otherwise." We disagree.

We interpret paragraph 16 as indicative of the parties' intent that "*This* Agreement," i.e., the Severance Agreement, "be governed and interpreted in accordance with" North Carolina law. Further, the language "any and all actions between or among any of the parties, whether arising hereunder or otherwise" – to which Defendant directs this Court's attention – does not support Defendant's position that North Carolina *law* will govern any action between or among the parties. Rather, this provision reveals only that the parties intended North Carolina courts to have "*exclusive jurisdiction and venue*" over any such action. In other words, this provision evidences the parties' intent

that any action between or among them be *heard in North Carolina*, not that any such action be governed by North Carolina law.

This interpretation is reinforced when construing paragraph 16 in conjunction with paragraph 8, which provides as follows:

> 8. <u>Non-disparagement, Non-Solicitation, Non-Competition, and Confidentiality</u>. In connection [with Mr. Sedlacek's] termination, [Defendant] . . . understands and acknowledges that all of his duties as a consultant of [Northern Star] ceased on the Separation Date, except that all obligations, including all non-disclosure, non-solicitation and non-competition obligations, that [Mr. Sedlacek] owes to [Northern Star], under law or any agreement [Mr. Sedlacek] has with [Northern Star], will continue after the Separation Date pursuant to the terms of those laws and/or agreements.

We believe the language in paragraph 8 reflects the parties' intent that Mr. Sedlacek remain bound by all previously assumed "non-competition obligations," including, but not limited to, the covenants in the 2010 Agreements. We note that neither this provision nor any other provision in the Severance Agreement seeks to redefine Mr. Sedlacek's "non-competition obligations"; rather, as paragraph 8 states, such obligations "will continue . . . pursuant to the terms of *those . . . agreements*." (Emphasis added). Both 2010 Agreements specify that Mr. Sedlacek's "non-

competition obligations" are to be defined with reference to New Jersey law, which includes the approach employed by New Jersey courts of permitting the trial court to rewrite an otherwise unreasonably restrictive covenant. Thus, to accept Mr. Sedlacek's position that the Severance Agreement superseded the prior agreements would also require this Court to accept the unlikely proposition that Northern Star intended to remove the non-compete covenants from the purview of New Jersey's flexible approach in favor of North Carolina's more restrictive approach, which does not permit the trial court to rewrite an overly broad restrictive covenant. *See, e.g.*, *Whittaker Gen. Med. Corp. v. Daniel*, 324 N.C. 523, 528, 379 S.E.2d 824, 828 (1989) ("The courts will not rewrite a contract if it is too broad but will simply not enforce it."). Thus, respecting the intent of the parties as manifested in the terms of their agreements, we hold that the trial court correctly concluded that New Jersey law governed its determination concerning the enforceability of the parties' non-compete covenants.

## B. Covenants in Asset Purchase Agreement

Mr. Sedlacek argues that the trial court erred in concluding that the covenants included in the 2010 Asset Purchase Agreement applied because they were superseded by the

covenants set forth in the 2010 Consulting Agreement. We do not believe that this issue is properly before us, since the trial court only enjoined Mr. Sedlacek from continued violations of the covenants contained in the Consulting Agreement. Specifically, the trial court enjoined Mr. Sedlacek in three ways, ordering that he "refrain from (i) soliciting, servicing, selling, designing, developing, producing, forming, purchasing, administering, or procuring for third-parties Local, Intermediate and Long Haul Commercial Auto, Garage, Towing, Collateral Recovery (Repossession), Auto Dismantlers and Automobile Transporters insurance products . . . within the Restricted Area as defined by the 2010 Consulting Agreement; (ii) furnishing, divulging and/or making accessible to others Confidential Information as defined in the 2010 Consulting Agreement; and (iii) continuing to be a member of a partnership or a stockholder, investor, officer, director, employee, agent, associate or consultant or persons and entities engaging in the foregoing activities [described in the Consulting Agreement]." Accordingly, this argument is dismissed.

### C. Enforceability of Non-Compete Covenants

Finally, Mr. Sedlacek argues that the covenants are not enforceable, even under New Jersey law. Under New Jersey law, a

covenant not to compete is enforceable to the extent that it is "reasonable under the circumstances." *Solari Indus., Inc. v. Malady*, 55 N.J. 571, 585, 264 A.2d 53, 61 (1970). To be deemed reasonable under the circumstances, a non-compete covenant (1) must be reasonably necessary to protect the employer's legitimate interests; (2) must not cause undue hardship on the former employee; and (3) must not be contrary to the public interest. *Id.* New Jersey courts have stated that an "employer has no legitimate interest in preventing competition as such," *Whitmyer Bros., Inc. v. Doyle*, 58 N.J. 25, 33, 274 A.2d 577 (1971), and, therefore, will not enforce "a restrictive agreement merely to aid the employer in extinguishing competition . . . from a former employee." *Campbell Soup*, 58 F.Supp.2d at 489. However, New Jersey courts will enforce a non-compete provision where doing so is necessary to protect legitimate interests of the employer, for instance, the "employer's interest in protecting trade secrets, confidential information, and customer relations." *Ingersoll-Rand Co. v. Ciavatta*, 110 N.J. 609, 628, 542 A.2d 879 (1988). Further, the New Jersey Supreme Court has recognized that "employers may have legitimate interests in protecting information that is not a trade secret or proprietary information, but highly specialized,

current information not generally known in the industry, created and stimulated by the research environment furnished by the employer, to which the employee has been exposed and enriched solely due to his employment." *Id.* at 638, 542 A.2d 879 (internal quotation marks omitted).

Here, Mr. Sedlacek argues that the trial court's order enforces a non-compete covenant that is overly broad as a matter of law. Northern Star counters that the non-compete covenant is not overly broad and that, in any event, Mr. Sedlacek's contentions to the contrary are "premature because the Trial Court has not ruled that any of the restrictive covenants at issue are to be enforced in their entirety."

We do not believe that Mr. Sedlacek's challenges with respect to the enforceability of the non-compete covenant set forth in the Consulting Agreement are premature. *See, e.g., Coskey's T.V. & Radio Sales v. Foti*, 253 N.J. Super. 626, 602 A.2d 789 (App. Div. 1992) (further limiting the scope of a non-compete covenant – after trial court had trimmed the covenant's scope – upon review of the trial court's preliminary injunction order). Accordingly, we address each portion of trial court's injunction order.

First, the trial court enjoined Mr. Sedlacek from engaging

in certain insurance-related business activities within the areas described in the Consulting Agreement, namely, the fifty states, the District of Columbia and Puerto Rico.  While the uncontested findings support the restrictions on the activities described, they do not support the geographic scope of those restrictions.  Specifically, the trial court made no findings with respect to the geographic regions where Northern Star competes for business.  Accordingly, we vacate and remand this portion of the injunction order for entry of findings with respect to the reasonableness of the geographic scope of the covenants as set forth in the Consulting Agreement, and to tailor the geographic scope of the restrictions to that area that is reasonable under the circumstances as supported by the court's findings.[1]

Second, the trial court's order enjoins Mr. Sedlacek from

_____

[1] We note that the covenants at issue contain a provision assigning a duration of ten years to the restrictions set forth therein.  If North Carolina law were applicable, it would be appropriate to consider the reasonableness of this ten-year duration at the preliminary injunction stage of these proceedings.  That is, if the ten-year duration were determined to be unreasonable, then, applying North Carolina law, the covenants would be unenforceable and a preliminary injunction would be inappropriate.  Here, however, New Jersey law applies, and the preliminary injunction enforces the covenant only until the propriety of a permanent injunction is presented for consideration by the trial court.  It will be necessary at that time for the trial court to inquire into the reasonableness of the ten-year duration of the covenants.

divulging confidential information of Northern Star. However, Mr. Sedlacek does not make any argument challenging this portion of the injunction as unreasonable, and we accordingly do not address this portion of the order.

Third, the trial court's order enjoins Mr. Sedlacek from participating in essentially any capacity in any entity engaged in the activities described in the first portion of the injunction, *supra*. This portion of the order appears overly broad, in that, for instance, it prohibits Mr. Sedlacek from owning stock as a passive investor in a publicly traded company that engages in any of the insurance businesses described in the Consulting Agreement. We therefore vacate and remand this portion of the injunction order for entry of findings and conclusions with respect to the reasonableness of the scope of these restrictions.

## V. Conclusion

In light of the foregoing, we vacate the trial court's preliminary injunction order and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED.

Judge STROUD and Judge HUNTER, JR. concur.