IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-342

Filed: 19 December 2017

Guilford County, No. 15 CVS 10300

MARKET AMERICA, INC., Plaintiff,

v.

PAMELA LEE and RUSTY ANCHOR GROUP, INC., Defendants.

Appeal by plaintiff from orders entered 17 August 2016 and 16 November 2016 by Judge Patrice A. Hinnant in Guilford County Superior Court. Heard in the Court of Appeals 19 September 2017.

*Womble Carlyle Sandridge & Rice, LLP, by Pressly M. Millen and Samuel B. Hartzell, for plaintiff-appellant.*

*Essex Richards, P.A., by Marc E. Gustafson, for defendants-appellees.*

DAVIS, Judge.

There are two questions presented in this appeal. The first issue is whether a plaintiff is permitted to voluntarily dismiss its claims pursuant to Rule 41(a)(1) of the North Carolina Rules of Civil Procedure after the trial court has announced its ruling against the plaintiff on the defendant's dispositive motion but before the court's ruling is memorialized in a written order. The second issue concerns the circumstances under which a covenant not to compete contained in an employment contract can be held unenforceable as a matter of law under Rule 12 of the North Carolina Rules of Civil Procedure.

Market America, Inc. ("Market America") appeals from the trial court's 17 August 2016 order vacating its notice of voluntary dismissal and dismissing with prejudice its claims against Pamela Lee[1] and from the court's 16 November 2016 order denying its motion for reconsideration. Because we conclude that Market America's voluntary dismissal was improperly taken, we affirm the portion of the trial court's order vacating the voluntary dismissal. However, in light of our determination that the court's dismissal of Market America's claims under Rule 12 constituted error, we reverse that portion of the trial court's order.

**Factual and Procedural Background**

We have summarized the pertinent facts below using Market America's own statements from its complaint, which we treat as true in reviewing a trial court's order granting a motion to dismiss. *See, e.g., Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 325, 626 S.E.2d 263, 266 (2006) ("When reviewing a complaint dismissed under Rule 12(b)(6), we treat a plaintiff's factual allegations as true.").

Market America is a product brokerage company that is headquartered in Greensboro, North Carolina and "sells its products through a network of independent distributors." Its employees have the opportunity to attain the status of "certified trainers" in order to provide specialized training to Market America's distributors.

---

[1] While the body of the trial court's 17 August 2016 order refers to Lee as Pamela *Everett*, the captions of both orders being appealed refer to her as Pamela Lee. For the sake of consistency, we refer to her herein as Pamela Lee.

Certified trainers are required to sign a Certified Trainer Agreement, which requires them to agree not to compete or solicit other distributors in a specified geographic area for one year after ceasing their employment with Market America.

Market America's employees can also become "approved speakers" who "represent the company's finest distributors and, as a result of their role, also attain a high profile with the Market America field sales organization." Approved speakers must sign a Speakers Bureau Agreement, which also imposes "certain restrictions concerning confidentiality and non-solicitation of Market America distributors."

Lee was hired as an independent distributor in 1997. During her employment with Market America, she became a certified trainer and later — through her corporate entity, Rusty Anchor Group, Inc. — an approved speaker. On 14 March 2008, she signed the Certified Trainer Agreement. On 26 June 2015, she signed the Speakers Bureau Agreement.

In 2015, while she was still employed with Market America, Lee began working with a network marketing company called ARIIX, which used "person-to-person and/or Internet sales of products or services directly to consumers in their homes or at places other than fixed, permanent retail establishments, through independent distributors or salespersons." Market America learned of Lee's involvement with ARIIX and discovered that she had "actively solicited other Market America distributors to become involved in ARIIX." Based on this discovery, Lee's

employment with Market America was terminated. After her employment with Market America ended, Lee continued to solicit Market America distributors to join ARIIX.

On 22 December 2015, Market America filed a complaint against Lee and Rusty Anchor Group, Inc. (collectively "Defendants") in Guilford County Superior Court, alleging that Lee had breached the Certified Trainer Agreement and the Speakers Bureau Agreement. On or about 2 March 2016, Defendants filed an answer along with a motion to dismiss based on Rule 12(b)(6) and a motion for judgment on the pleadings pursuant to Rule 12(c).

On 6 July 2016, a hearing was held before the Honorable Patrice A. Hinnant on the Rule 12 motions. At the close of the hearing, Judge Hinnant announced from the bench that she was granting Defendants' motions and directed Defendants' counsel to draft a written order.

A few hours after Judge Hinnant announced her ruling in open court, Market America filed a notice of voluntary dismissal stating that it was dismissing without prejudice all of its claims against Defendants pursuant to Rule 41(a)(1). On 11 July 2016, Defendants filed a motion to vacate the notice of voluntary dismissal on the ground that the dismissal was ineffective because it was not taken in good faith.

On 17 August 2016, Judge Hinnant entered a written order (1) granting Defendants' motion to vacate the voluntary dismissal; (2) dismissing Market

America's claims against Rusty Anchor Group without prejudice; and (3) dismissing its claims against Lee with prejudice to the extent that those claims were based upon a breach of paragraphs 18(b) and (c) and 19(b) and (c) of the Certified Trainer Agreement.

Market America filed a motion for reconsideration on 31 August 2016. On 16 November 2016, Judge Hinnant entered an order denying this motion. Market America subsequently filed a notice of appeal as to both of the trial court's orders.

**Analysis**

**I. Appellate Jurisdiction**

As an initial matter, we must determine whether we have jurisdiction to hear this appeal. "A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Duval v. OM Hospitality, LLC*, 186 N.C. App. 390, 392, 651 S.E.2d 261, 263 (2007) (citation omitted). Conversely, an order or judgment is interlocutory if it does not settle all of the issues in the case but rather "directs some further proceeding preliminary to the final decree." *Heavner v. Heavner*, 73 N.C. App. 331, 332, 326 S.E.2d 78, 80, *disc. review denied*, 313 N.C. 601, 330 S.E.2d 610 (1985). In the present case, Lee asserts that Judge Hinnant's rulings were interlocutory because "the trial court did not dismiss those portions of Market America's claim involving [Lee]'s alleged breach of

the Speakers Bureau Agreement or [Lee]'s alleged breach of Paragraph 18(a) and Paragraph 19(a) of the Certified Trainer Agreement."

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Paradigm Consultants, Ltd. v. Builders Mut. Ins. Co.*, 228 N.C. App. 314, 317, 745 S.E.2d 69, 72 (2013) (citation and quotation marks omitted). The prohibition against interlocutory appeals "prevents fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts." *Russell v. State Farm Ins. Co.*, 136 N.C. App. 798, 800, 526 S.E.2d 494, 496 (2000) (citation and brackets omitted).

> However, there are two avenues by which a party may immediately appeal an interlocutory order or judgment. First, if the order or judgment is final as to some but not all of the claims or parties, and the trial court certifies the case for appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), an immediate appeal will lie. Second, an appeal is permitted under N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1) if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review.

*N.C. Dep't of Transp. v. Page*, 119 N.C. App. 730, 734, 460 S.E.2d 332, 334 (1995) (internal citations omitted).

Judge Hinnant's order does not contain a certification under Rule 54(b). Therefore, Market America's appeal is proper only if it can demonstrate a substantial right that would be lost absent an immediate appeal. *See Embler v. Embler*, 143 N.C. App. 162, 166, 545 S.E.2d 259, 262 (2001) ("The burden is on the appellant to

establish that a substantial right will be affected unless he is allowed immediate appeal from an interlocutory order." (citation omitted)).

Here, Lee concedes — and we agree — that a substantial right is affected with respect to the trial court's order vacating Market America's voluntary dismissal. However, Lee argues that Market America will not be deprived of a substantial right in the event it is required to await a final judgment in this case before it is permitted to appeal Judge Hinnant's ruling on Lee's Rule 12 motions.

Assuming, without deciding, that Market America has failed to make the requisite showing of a substantial right with regard to the court's ruling under Rule 12, based on considerations of judicial economy and pursuant to our discretion under Rule 21 of the North Carolina Rules of Appellate Procedure, we elect to treat Market America's appeal as a petition for *certiorari* with regard to this issue. *See Carolina Bank v. Chatham Station, Inc.*, 186 N.C. App. 424, 428, 651 S.E.2d 386, 389 (2007) ("[B]ecause the case *sub judice* is one of those exceptional cases where judicial economy will be served by reviewing the interlocutory order, we will treat the appeal as a petition for a writ of certiorari and consider the order on its merits."). Thus, we address below each of the arguments Market America has raised in its appeal.

**II. Voluntary Dismissal**

We first consider Market America's challenge to the portion of the trial court's order vacating its notice of voluntary dismissal as to its claim against Lee.[2] Market America does not specifically contest any of Judge Hinnant's findings as to the circumstances under which the notice of voluntary dismissal was filed. Instead, it challenges only the conclusion that the voluntary dismissal was legally ineffective, arguing that "[s]trategic dismissals are not bad faith."

Rule 41(a)(1) of the North Carolina Rules of Civil Procedure states, in pertinent part, as follows:

> (1) **By Plaintiff; by Stipulation.** — Subject to the provisions of Rule 23(c) and of any statute of this State, an action or any claim therein may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before the plaintiff rests his case . . .

N.C. R. Civ. P. 41(a)(1).

Our Supreme Court has explained that

> [t]he purpose of our long-standing rule allowing a plaintiff to take a voluntary dismissal . . . is to provide a one-time opportunity where the plaintiff, for whatever reason, does not want to continue the suit. The range of reasons clearly includes those circumstances in which the plaintiff fears dismissal of the case for rule violations, shortcomings in the pleadings, evidentiary failures, or any other of the myriad reasons for which the cause of action might fail. *The only limitations are that the dismissal not be done in bad faith and that it be done prior to a trial court's ruling*

---

[2] The parties do not challenge in this appeal the trial court's dismissal without prejudice of Market America's claim against Rusty Anchor Group. Therefore, we do not address that portion of the trial court's ruling.

> *dismissing plaintiff's claim or otherwise ruling against plaintiff at any time prior to plaintiff resting his or her case at trial.*

*Brisson v. Santoriello*, 351 N.C. 589, 597, 528 S.E.2d 568, 573 (2000) (emphasis added).

Thus, two limitations exist on the general rule permitting voluntary dismissals. First, voluntary dismissals may not be taken in bad faith. Second, a voluntary dismissal cannot be taken after the plaintiff has rested its case. *Boyd v. Rekuc*, __ N.C. App. __, __, 782 S.E.2d 916, 918, *disc. review denied*, __ N.C. __, 792 S.E.2d 517 (2016).

In the present case, the trial court relied on the bad faith exception in vacating Market America's voluntary dismissal. In so doing, the court made the following pertinent findings:

> 1. At the time [Market America] filed its Notice of Voluntary Dismissal, [Market America] knew that the Court had ruled against [Market America] on the merits of Defendants' Rule 12 Motions just hours before and that the Court was awaiting the submission by counsel for Defendants of a written order of dismissal.
>
> 2. The timing of the filing of [Market America]'s Notice of Voluntary Dismissal permits no conclusion other than that [Market America] was attempting to prevent the Court from dismissing [Market America's] claims as set forth above.
>
> 3. [Market America]'s attempt at voluntary dismissal, taken under these circumstances, cannot be said to

have been made in good faith.

4. The Voluntary Dismissal is therefore void and should be vacated.

Market America does not challenge Finding Nos. 1 and 2 in which the trial court found that it took a voluntary dismissal in order to prevent the court from entering a written order memorializing its decision to grant Lee's Rule 12 motions after Judge Hinnant had informed the parties of her ruling. Indeed, in its appellate brief Market America fails to offer any other reason for its decision to file the notice of voluntary dismissal. Thus, Finding Nos. 1 and 2 are binding on appeal. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.").[3]

Instead, Market America contests the trial court's legal ruling that its voluntary dismissal was taken in bad faith. Specifically, it argues that no published opinion exists in which North Carolina's appellate courts have invalidated an attempted voluntary dismissal based on the bad faith exception under these circumstances. Market America asserts that the scope of this exception is restricted exclusively to the unique fact pattern existing in *Estrada v. Burnham*, 316 N.C. 318,

---

[3] While Market America describes the trial court's ruling on this issue as based purely on the "timing" of the notice of voluntary dismissal, this characterization is incomplete. The trial court's findings were that Market America took the voluntary dismissal for the sole purpose of preventing the court from following through with the ruling it had announced to the parties hours earlier.

341 S.E.2d 538 (1986), *superseded by statute on other grounds as stated in Turner v. Duke Univ.*, 325 N.C. 152, 381 S.E.2d 706 (1989) — the case in which our Supreme Court first recognized the bad faith exception.

In *Estrada*, the plaintiff suffered complications during a surgery to repair his leg wound. *Estrada*, 316 N.C. at 319, 341 S.E.2d at 539-40. One day before the applicable three-year statute of limitations was set to expire, the plaintiff filed a bare-bones medical malpractice complaint. Two minutes after the complaint was filed, the plaintiff filed a notice of voluntary dismissal. No attempt was ever made to serve the summons and complaint upon the defendant. *Id.*

Over eleven months later, he filed a new complaint arising out of the same incident that provided more detail as to the basis for his claims. The defendant moved to dismiss the second complaint as time-barred. In response, the plaintiff argued that the second complaint was timely because Rule 41 had granted him an additional one-year period from the date the voluntary dismissal was taken in which to refile the action. *Id.* at 321, 341 S.E.2d at 540. Nevertheless, the trial court dismissed the second complaint as untimely. *Id.*

The issue on appeal was whether the voluntary dismissal of the first appeal was taken in good faith so as to be legally effective and thereby extend the limitations period for an additional year as provided for in Rule 41. In rejecting the plaintiff's argument, our Supreme Court observed that the plaintiff made a "candid admission

that the . . . lawsuit was filed with the sole intention of dismissing it in order to avoid the lapse of the statute of limitations" and that such an admission was "tantamount to a concession that his only purpose in certifying the complaint was to extend the deadline by which he must draft and file a sufficient complaint." *Id.* at 325, 341 S.E.2d at 543. For this reason, the Court held that the voluntary dismissal had been taken in bad faith and was without legal effect. *Id.*

In *Eubank v. Van-Riel*, 221 N.C. App. 433, 727 S.E.2d 25, 2012 N.C. App. LEXIS 727 (2012) (unpublished), *disc. review denied*, 366 N.C. 571, 738 S.E.2d 380 (2013), this Court addressed the applicability of the bad faith exception under Rule 41(a)(1) to the precise circumstances at issue in the present case. In *Eubank*, the trial judge notified the parties that it was granting the defendants' motion to dismiss and directed the defendants' counsel to prepare an order for the judge's signature. After the court's ruling was announced but before the order was signed, the plaintiff filed a voluntary dismissal of his claim against the defendants. *Id.* at *32. The trial court ruled that the voluntary dismissal under these circumstances was ineffective. *Id.* at *28.

Writing for a panel of this Court, Judge (now Justice) Ervin stated as follows:

> The record in this case clearly shows that, on 30 March 2011, the trial court notified the parties that it had granted Defendants' dismissal motion and directed Defendants' counsel to prepare an order to that effect for the court's signature. Plaintiff's "voluntary dismissal" was filed on the following day, a point in time after Plaintiff

> knew that the trial court had ruled against him on the merits of Defendants' motion and prior to the entry of a formal dismissal order. The timing of Plaintiff's motion permits no conclusion other than that he was attempting to prevent the trial court from dismissing his complaint. A voluntary dismissal taken under these circumstances cannot possibly be said to have been taken in good faith, so that the purported voluntary dismissal by plaintiffs is void and is hereby vacated.

*Id.* at \*32-33 (internal citation, quotation marks, and brackets omitted).

Unpublished opinions of this Court lack precedential authority. *See* N.C. R. App. P. 30(e)(3) (providing that "an unpublished decision . . . does not constitute controlling legal authority"). Nevertheless, we deem *Eubank* to be instructive on this issue and reach a similar conclusion in the present case.

While Rule 41(a)(1) clearly permits plaintiffs to voluntarily dismiss their claims for a multitude of reasons, such a dismissal must be taken in good faith. Taking a voluntary dismissal based on concerns about the *potential* for a future adverse ruling by the Court is permissible. Dismissing an action after such a ruling has actually been announced by the court is not. Once the trial court has informed the parties of its ruling against the plaintiff on the defendant's dispositive motion, Rule 41 does not permit the proceeding to devolve into a footrace between counsel to see whether a notice of voluntary dismissal can be filed before the court's ruling is memorialized in a written order and filed with the clerk of court. To hold otherwise

would "make a mockery of" the court's ruling. *Maurice v. Hatterasman Motel Corp.*, 38 N.C. App. 588, 592, 248 S.E.2d 430, 433 (1978).[4]

We are unable to agree with Market America's argument that the bad faith exception under Rule 41 should be limited to the specific type of bad faith at issue in *Estrada* because it has failed to offer any persuasive argument as to why that should be the case. Bad faith can exist in a variety of forms, and we are satisfied that it occurred in connection with Market America's attempted voluntary dismissal here.

Market America also contends that application of the bad faith exception on the facts of this case would be inconsistent with this Court's decisions in *Schnitzlein v. Hardee's Food Sys., Inc.*, 134 N.C. App. 153, 516 S.E.2d 891, *disc. review denied*, 351 N.C. 109, 540 S.E.2d 365 (1999); *Carlisle v. CSX Transp., Inc.*, 193 N.C. App. 509, 668 S.E.2d 98 (2008), *cert. denied and disc. review denied*, 363 N.C. 123, 675 S.E.2d 40 (2009); and *Whitehurst v. Va. Dare Transp. Co.*, 19 N.C. App. 352, 198 S.E.2d 741 (1973). However, this assertion is incorrect. In none of those cases was the issue of bad faith actually addressed by this Court. Thus, while Market America states that *Eubank* is the only North Carolina appellate decision finding bad faith in this context,

---

[4] While Market America notes that a footnote in *Eubank* raised the possibility that scenarios may exist where the taking of a voluntary dismissal after the trial court has announced its ruling does not constitute bad faith, we need not address the possible existence of such scenarios given that — as noted above — Market America has not attempted to challenge Judge Hinnant's findings as to its motive for filing its notice of voluntary dismissal. We observe that in the same footnote this Court stated that under the circumstances at issue in *Eubank* — which are identical to the circumstances at issue here — the voluntary dismissal was "clearly [taken] in bad faith . . . ." *Eubank*, at *32 n.3.

a more accurate statement would be that *Eubank* is the only case in which this issue has ever been expressly addressed by our appellate courts, and it expressly rejected the argument being advanced here by Market America.

Finally, Market America's contention that Judge Hinnant's ruling impermissibly infringed upon its "unfettered ability to dismiss its claims" is equally unavailing. (Quotation marks omitted.) As our case law makes abundantly clear, a plaintiff's right to take a voluntary dismissal is, in fact, "fettered" by the requirements that such a dismissal not be taken in bad faith or after a party has rested its case. *See, e.g., Brisson*, 351 N.C. at 597, 528 S.E.2d at 573. Thus, our holding today simply applies an exception that our Supreme Court has expressly recognized. Accordingly, we affirm the portion of the trial court's 17 August 2016 order vacating Market America's voluntary dismissal.[5]

### III. Lee's Rule 12 Motions

Market America's final argument on appeal is that the trial court erred by granting Lee's motions under Rule 12. We agree.

---

[5] Market America argues in the alternative that even assuming Judge Hinnant's interpretation of Rule 41(a)(1) on these facts was correct, her order vacating its notice of voluntary dismissal should not have encompassed its dismissal of those claims unaffected by her ruling on the Rule 12 motions — that is, those claims alleging a breach of provisions of the agreements at issue *other than* paragraphs 18(b) and (c) and 19(b) and (c) of the Certified Trainer Agreement. While Market America is technically correct on this point, the issue is moot in light of our holding below reversing the court's ruling on Lee's Rule 12 motions.

"It is well settled that both a motion for judgment on the pleadings and a motion to dismiss for failure to state a claim upon which relief can be granted should be granted when a complaint fails to allege facts sufficient to state a cause of action or pleads facts which deny the right to any relief." *Bank of Am., N.A. v. Rice*, __ N.C. App. __, __, 780 S.E.2d 873, 882 (2015). "This Court will review *de novo* the grant of a motion to dismiss under Rule 12(b)(6) and for judgment on the pleadings under Rule 12(c)." *Freedman v. Payne*, __ N.C. App. __, __, 800 S.E.2d 686, 689, *disc. review denied*, __ N.C. __, 803 S.E.2d 387 (2017).

"Under North Carolina law, a covenant not to compete is valid and enforceable if it is (1) in writing; (2) made a part of the employment contract; (3) based on valuable consideration; (4) reasonable as to time and territory; and, (5) designed to protect a legitimate business interest of the employer." *Okuma Am. Corp. v. Bowers*, 181 N.C. App. 85, 88, 638 S.E.2d 617, 620 (2007) (citations omitted).

In its 17 August 2016 order, the trial court granted Lee's Rule 12 motions based on its ruling that the territorial restrictions contained in Paragraphs 18(b) and (c) and 19(b) and (c) of the Certified Trainer Agreement were "unreasonable and overbroad as a matter of law." Market America argues that the trial court's order was erroneous at the Rule 12 stage because the enforceability of the provisions at issue could not be determined absent evidence to be obtained through discovery showing the precise scope of the restrictions placed on Lee.

In determining whether the geographic scope of a covenant not to compete is reasonable, this Court has looked to the following factors: "(1) the area, or scope, of the restriction; (2) the area assigned to the employee; (3) the area where the employee actually worked or was subject to work; (4) the area in which the employer operated; (5) the nature of the business involved; and (6) the nature of the employee's duty and his knowledge of the employer's business operation." *Hartman v. W.H. Odell & Assocs.*, 117 N.C. App. 307, 312, 450 S.E.2d 912, 917 (1994), *disc. review denied*, 339 N.C. 612, 454 S.E.2d 251 (1995). Moreover, we have held that

> the time and geographic limitations of a covenant not to compete must be considered in tandem, such that a longer period of time is acceptable where the geographic restriction is relatively small, and *vice versa*. Although either the time or the territory restriction, standing alone, may be reasonable, the combined effect of the two may be unreasonable. Nevertheless, the scope of the geographic restriction must not be any wider than is necessary to protect the employer's reasonable business interests.

*Okuma*, 181 N.C. App. at 89, 638 S.E.2d at 620 (internal citations, quotation marks, and brackets omitted). "In deciding what is reasonable, the court looks to the facts and circumstances of the particular case." *Clyde Rudd & Assocs., Inc. v. Taylor*, 29 N.C. App. 679, 684, 225 S.E.2d 602, 605 (internal citation and quotation marks omitted), *disc. review denied*, 290 N.C. 659, 228 S.E.2d 451 (1976).

In their respective briefs, the parties' arguments on this issue are based on the portion of Market America's complaint that discusses — and quotes from — the Certified Trainer Agreement.[6]  The complaint alleges, in relevant part, as follows:

> . . . Certified Trainers . . . based on their high profile and positive reputation with the field network of Market America distributors, agree that for a period of one year after they cease to be Market America distributors they will not solicit any current or former Market America distributors within the following geographical territory:
>
>> (a) within 100 miles of Distributor's residence during the time he/she was a Market America independent distributor; or (b) within 100 miles of the residences of any of Distributor's personally sponsored Market America independent distributors, or (c) within 100 miles of the residence of any Market America independent distributor in distributor's downline who achieved the level of Executive Coordinator or above during the time that Distributor was a Market America independent distributor.
>
> . . . Certified Trainers also agree to a limited non-compete in that same geographical territory.  Specifically, for a period of one year after ceasing to act in that role, they agree that they will not act in any capacity for another

---

[6] We note that the trial court's order makes clear that it reviewed not only Market America's complaint but also "the documents specifically referred to therein."  Presumably, this means that the trial court reviewed the Certified Trainer Agreement itself even though this document was not attached to Market America's complaint.  In so doing, the trial court was not required to convert Lee's motions into a motion for summary judgment.  "[A] trial court's consideration of a contract which is the subject matter of an action does not expand the scope of a Rule 12(b)(6) hearing and does not create justifiable surprise in the nonmoving party." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) (citation omitted).  Here, the Certified Trainer Agreement was a subject of Market America's complaint and was quoted from therein.

network marketing company.[7]

Our appellate courts have made clear that non-compete agreements are unenforceable where the time and territorial restrictions contained therein are overbroad. *See, e.g.*, *Henley Paper Co. v. McAllister*, 253 N.C. 529, 535, 117 S.E.2d 431, 434 (1960) (three-year restriction on manufacture, sale, or distribution of paper or paper products within 300-mile radius of any office or branch of defendant company that had offices in 13 states was void); *CopyPro, Inc. v. Musgrove*, 232 N.C. App. 194, 204, 754 S.E.2d 188, 195 (2014) (three-year restriction on working for similar business within geographical area consisting of over twenty counties in North Carolina or within a 60-mile radius of Greenville and Wilmington was void); *Hartman*, 117 N.C. App. at 315, 450 S.E.2d at 919 (five-year restriction on working for "competitors" in eight states was void).

However, this Court has previously held that a ruling on the enforceability of such an agreement cannot be made at the pleadings stage in cases where evidence is needed to show the reasonableness of the restrictions contained therein. In *Okuma*, the plaintiff brought an action against its former employee for violation of a non-compete agreement. *Okuma*, 181 N.C. App. at 87-88, 638 S.E.2d at 619. The agreement stated that the defendant could not work for a direct competitor of the

---

[7] The complaint states that the Speakers Bureau Agreement also contained a non-solicitation agreement. However, because the Speakers Bureau Agreement was not a basis for the trial court's 17 August 2016 order, we do not address the enforceability of the restrictions contained in that document.

plaintiff for six months following the cessation of his employment in "areas in which [the plaintiff] does business[.]" *Id.* at 87, 638 S.E.2d at 619. It also prohibited the defendant "from soliciting business from [the plaintiff]'s customers" during this six-month time period. *Id.* at 89, 638 S.E.2d at 620. The defendant filed a motion to dismiss, asserting that the non-compete language was overly broad and therefore unenforceable as a matter of law. *Id.* at 86, 638 S.E.2d at 618. The trial court granted the motion, and the plaintiff appealed. *Id.*

This Court held that "the covenant's enforceability in this case rests on questions of fact and cannot be determined as a matter of law." *Id.* We held that the six-month period was "well within the established parameters for covenants not to compete in this State" and that although "the geographic effect of the restriction is quite broad . . . taken in conjunction with the six-month duration, it is not *per se* unreasonable in light of our courts' past rulings." *Id.* at 90, 638 S.E.2d at 620. Upon consideration of the legitimate business interest alleged in the plaintiff's complaint, we determined that because the non-compete agreement took into account the defendant's senior position in the company and only barred his employment with direct competitors the restrictions were not necessarily unreasonable. *Id.* at 91-92, 638 S.E.2d at 621-22. We concluded that

> when examining the time and geographic restrictions of a covenant not to compete, we are unable to conclude that a covenant restricting employment for six months with a direct competitor in a related capacity, even with a

> geographic scope potentially extending throughout North and South America due to the client-based restrictions, is overly broad and unenforceable as a matter of law. In this case, the enforceability of the covenant not to compete rests on factual questions such as whether the geographic effect of the client-based restriction is excessive in light of [the defendant's] actual contacts with customers, the nature of his duties, the level of his responsibilities, the scope of his knowledge, and other issues relating to how closely the geographic limits fit with [defendant's] work for [the plaintiff]. Accordingly, we hold that, when taken as true, [plaintiff's] complaint stated a claim for which relief might be granted.

*Id.* at 92, 638 S.E.2d at 622.

Here, Market America has alleged in its complaint that certified trainers maintain a "high profile[,]" hold a "sensitive position . . . in the hierarchy of the company[,]" and are "expos[ed] to [a] wide variety of Market America distributors . . . ." For these reasons, the complaint asserts, the restrictions contained in the Certified Trainer Agreement are necessary to protect Market America's confidentiality concerns.

The provisions at issue in the Certified Trainer Agreement contain a time restriction of one year. As an initial matter, we recognize that this Court has previously held that a "one year time restriction is well within the established parameters for covenants not to compete." *Precision Walls v. Servie*, 152 N.C. App. 630, 638, 568 S.E.2d 267, 273 (2002). Nevertheless, as noted above, the duration of the time restriction in a covenant not to compete cannot be evaluated in a vacuum.

Rather, the time restriction must be analyzed in conjunction with the geographic restrictions imposed on Lee.

In this case, it is impossible to determine based solely on the four corners of the complaint whether the territorial restrictions in the Certified Trainer Agreement are appropriately tailored to protect Market America's legitimate business interests. Indeed, because of the way the provisions are worded, we presently have no way of knowing the actual effect of the geographic restrictions on Lee. The complaint does not specify the number of independent distributors Lee personally sponsored or the locations of the residences of the independent distributors in Lee's "downline" who achieved the level of executive coordinator or above during the time period specified in the agreement. Without this and other additional relevant information, the potential overbreadth of the Certified Trainer Agreement's restrictions on Lee cannot be meaningfully assessed.

Taking Market America's allegations in the complaint as true, as we must, we hold that the trial court lacked a sufficient basis to rule as a matter of law that the provisions of paragraphs 18(b) and (c) and 19(b) and (c) of the Certified Trainer Agreement are overbroad and unreasonable. Accordingly, we reverse the portion of the trial court's 17 August 2016 order granting Lee's Rule 12 motions.

**Conclusion**

For the reasons stated above, we (1) affirm the portion of the trial court's 17 August 2016 order vacating Market America's notice of voluntary dismissal; and (2) reverse the portion of the court's order granting Lee's Rule 12 motions.

AFFIRMED IN PART; REVERSED IN PART.

Judges BRYANT and INMAN concur.