Eye Dialogue LLC v. Party Reflections, Inc., 2020 NCBC 54.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

EYE DIALOGUE LLC,

   Plaintiff,

v.

PARTY REFLECTIONS, INC.,
DANIEL W. HOOKS, and PAUL
S. EMRICK,

   Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20-CVS-5104

**ORDER AND OPINION ON
DEFENDANT PAUL S. EMRICK'S
MOTION TO DISMISS**

THIS MATTER comes before the Court on Defendant Paul S. Emrick's Motion to Dismiss. ("Motion," ECF No. 11.)

THE COURT, having considered the Motion, the briefs filed in support of and in opposition to the Motion, the arguments of counsel at the hearing on the Motion, the applicable law, and other appropriate matters of record, CONCLUDES that the Motion should be GRANTED, in part, and DENIED, in part, for the reasons set forth below.

*Rosenwood, Rose & Litwak, PLLC, by Nancy S. Litwak, Ryan M. Arnold, and Erik M. Rosenwood, for Plaintiff Eye Dialogue LLC.*

*Lewis Brisbois Bisgaard & Smith, LLP, by Kevin Parsons, Philip A. Hinson, and John A. Bruno, for Defendant Paul S. Emrick.*

McGuire, Judge.

## I. FACTS

1. The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (hereinafter, "Rule(s)"), but only recites those facts included in the complaint that are relevant to the Court's

determination of the Motion. *See, e.g., Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). The facts relevant to the determination of the Motion are drawn from Plaintiff's verified complaint. ("Verified Complaint," ECF No. 3.)

2.     Plaintiff Eye Dialogue LLC ("Plaintiff" or "Eye Dialogue") is a North Carolina limited liability company with its principal place of business in Mecklenburg County, North Carolina. (*Id.* at ¶ 1.) Eye Dialogue "is in the business of providing lighting, sound, special effects, and video services for event-related needs." (*Id.* at ¶ 8.) Donald L. James ("Don James") owns Eye Dialogue, and his son, Michael Paul James is the manager (collectively Don James and Michael Paul James are the "Jameses"). (*Id.* at ¶ 24.)

3.     Defendant Party Reflections, Inc. ("Party Reflections") is a North Carolina corporation with its principal place of business in Mecklenburg County, North Carolina. (*Id.* at ¶ 2.) Party Reflections specializes in providing rentals of party necessities such as "chairs, dance floors, décor, food service equipment, furniture, tables, tents, etc." (*Id.* at ¶ 9.) Defendant Daniel W. Hooks ("Hooks") is the president/CEO of Party Reflections. (*Id.* at ¶ 3.)

4.     Plaintiff alleges that Eye Dialogue and Party Reflections are competitors providing similar services in the same locale. (*Id.* at ¶ 12.) However, Plaintiff also alleges that while Plaintiff was in the business of providing audio/visual ("A/V") systems, equipment and services, "Party Reflections, at all relevant times,

was not in the business of providing [A/V] systems, equipment and services for event-related needs." (*Id.* at ¶ 10–11.)

5. Defendant Paul Emrick ("Emrick"; collectively, Party Reflections, Hooks, and Emrick are referred to as "Defendants") began working for Eye Dialogue sometime around June 2008. (*Id.* at ¶ 15.) Prior to beginning employment with Eye Dialogue, Emerick signed an "Employee Non-Compete Agreement." (*Id.* at ¶ 16; "Non-Compete," ECF No. 3 at Ex. A.) Pursuant to the Non-Compete, Emrick agreed to not "directly or indirectly compete with the business of" Eye Dialogue "during the period of his employment and for a period of 2 years following termination of employment." ("Non-Competition Provision," ECF No. 3 at Ex. A.) The Non-Compete further defines "not compete" to mean that "the Employee shall not own, manage, operate, consult or be employed in a business substantially similar to, or competitive with, the present business of [Eye Dialogue] or such other business activity in which [Eye Dialogue] may substantially engage during the term of employment." (*Id.*)

6. The Non-Compete further provides that its restrictions extend "for a radius of 200 miles from the present location of [Eye Dialogue]." (*Id.*)

7. The Non-Compete also contains a non-disclosure provision in which Emrick acknowledges that Eye Dialogue may provide Emrick with "access to trade secrets, customers and other confidential data and good will. [And Emrick] agrees to retain said information as confidential and not to use said information on his . . . own behalf or disclose same to any third party." ("Non-Disclosure Provision," ECF No. 3 at Ex. A.)

8.      By 2014, Emrick began serving as Eye Dialogue's general manager, giving him access to "Plaintiff's customer lists, pending orders, accounts, payroll information, emails, and employee information[.]"  (*Id*. at ¶ 23.)  In early 2019, Emrick offered Don James approximately $600,000 for a 51% ownership interest in Eye Dialogue.  (*Id*. at ¶ 25.)  The offer was rejected.  (*Id*.)

9.      In or around March 2019, Hooks began to express "interest in purchasing Plaintiff" and valued Eye Dialogue at approximately $400,000.  (*Id*. at ¶ 26–27.)  The Jameses rejected the offer.  (*Id*. at ¶ 28.)

10.      Plaintiff alleges, on information and belief, that "the Defendants, having had their offers to purchase [Eye Dialogue] rejected . . . committed to a plan that would result in Defendants effectively owning [Eye Dialogue] without having to pay fair market value[.]"  (*Id*. at ¶ 29.)  Accordingly, Plaintiff contends that while still employed with Eye Dialogue, Emrick began reporting to Hooks about what was happening internally at Eye Dialogue and how they could transition "Plaintiff's employees, customers, clients, and accounts to Party Reflections."  (*Id*. at ¶¶ 30–35.)  More specifically, Plaintiff alleges that "[t]hroughout late June 2019, Emrick continued to forward Hooks emails and other documents either sent to Emrick by Michael Paul James on behalf of Plaintiff, or taken from Plaintiff by Emrick directly, which emails and documents constituted proprietary, confidential, and sensitive information specific to Plaintiff."  (*Id*. at ¶ 35.)

11.      In mid-July 2019, Emrick resigned from his position with Eye Dialogue and commenced employment with Party Reflections.  (*Id*. at ¶ 36.)  In the wake of

Emrick's resignation, Plaintiff contends that Emrick and Hooks continued to take actions that were detrimental to the continued operations of Eye Dialogue. (*See id.* at ¶¶ 37–50.) In sum, Plaintiff alleges that:

> Defendants conspired to and engaged in a common scheme to effectively run Plaintiff's business operations into the ground and/or reap the benefits from and value of Plaintiff's business, all the while feigning interest in purchasing Plaintiff's goodwill, assets, equipment, etc., by, among other things: convincing all of Plaintiff's employees to leave Plaintiff in order to work for Party Reflections; convincing Plaintiff's customers, clients and accounts to move over to Party Reflections; misappropriating and utilizing Plaintiff's trade secrets; and using Plaintiff's former employees to set up an A/V team at Party Reflections where it previously had none.

(*Id.* at ¶ 13.)

12. Plaintiff asserts that Defendants' conduct gives rise to numerous causes of action under North Carolina law, but specifically with regard to Emrick, demonstrates a claim for breach of the Non-Compete.

## II. PROCEDURAL BACKGROUND

13. Plaintiff filed the Verified Complaint in this matter on March 11, 2020. On March 19, 2020, this case was designated as a mandatory complex business case and assigned to the undersigned. (Designation Order, ECF No. 1; Assignment Order, ECF No. 2.)

14. In the Verified Complaint, Plaintiff alleges claims against Emrick for: breach of fiduciary duty ("First Claim"); actual fraud ("Seventh Claim"); constructive fraud ("Eighth Claim"); conversion ("Ninth Claim"); obtaining property by false pretenses ("Tenth Claim"); and breach of contract and breach of duty to act in good

faith and deal fairly ("Twelvth [sic] Claim"). Plaintiff alleges claims against all Defendants for: tortious interference with contractual relations ("Second Claim"); tortious interference with prospective economic advantage ("Third Claim"); misappropriation of trade secrets ("Fourth Claim"); computer trespass ("Fifth Claim"); unjust enrichment ("Sixth Claim"); civil conspiracy ("Eleventh Claim"); and motions for TRO, preliminary injunction and permanent injunction ("Thirteenth Claim").

15. On May 14, 2020, Emrick filed the Motion and a brief in support (Br. in Supp., ECF No. 12), seeking the dismissal only of Plaintiff's claim for breach of contract and breach of the duty of good faith and fair dealing pursuant to Rule 12(b)(6). On June 2, 2020, Plaintiff filed a response brief in opposition to the Motion (Br. in Opp., ECF No. 14), and Emrick filed his reply brief on June 12, 2020 (Reply Br., ECF No. 15).

16. On June 25, 2020, the Court held a hearing on the Motion, which is now ripe for resolution.

III. ANALYSIS

A. Standard of Review

17. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). Our appellate courts frequently reaffirm that

North Carolina is a notice pleading state. *See, e.g., Feltman v. City of Wilson*, 238 N.C. App. 246, 252, 767 S.E.2d 615, 620 (2014) (quoting *Wake Cty. v. Hotels.com, L.P.*, 235 N.C. App. 633, 647, 762 S.E.2d 477, 486 (2014)) ("Under notice pleading, a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of res judicata, and to show the type of case brought.").

18.     "It is well established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736–37 (2018) (quoting *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)).

19.     In ruling on a Rule 12(b)(6) motion, the court construes the complaint liberally and accepts all allegations as true. *See Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citation and quotation marks omitted).

20.     In addition, "when ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to

which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).

## B. Breach of Contract

21. In its Twelfth Claim, Plaintiff pleads a claim against Emrick for breach of contract and breach of duty to act in good faith and deal fairly. (ECF No. 3, at ¶¶ 140–48.) Plaintiff alleges that the Non-Compete is a valid and binding contract between Plaintiff and Emrick, which Emrick breached by

> disclosing and using confidential information without authorization and for the purpose of operating and/or being employed by [Party Reflections], disclosing and using confidential information without authorization, being employed by Party Reflections in violation of the reasonable restrictions of the [Non-Compete], soliciting Plaintiff's clients and employees . . . and/or generally acting in breach of the terms and conditions of the [Non-Compete].

(*Id.* at ¶¶ 140, 144.)

### i. The Non-Competition Provision

22. Emrick argues that the Non-Competition Provision is unenforceable because it prohibits Emrick from engaging in "employment that is 'directly or indirectly . . .' competitive with Eye Dialogue[,]" and therefore, is overly broad on its face. (ECF No. 12, at p. 4.) In addition, Emrick contends that the Non-Competition Provision is unenforceable as a matter of law because it contains unreasonable geographic and durational restrictions. (*Id.*)

23.     Under North Carolina law, a covenant not to compete is valid and enforceable if it is (1) in writing; (2) made a part of the employment contract; (3) based on valuable consideration; (4) reasonable as to time and territory; and, (5) designed to protect a legitimate business interest of the employer. *Mkt. Am., Inc. v. Lee*, 257 N.C. App. 98, 108, 809 S.E.2d 32, 39–40 (2017) (quoting *Okuma Am. Corp. v. Bowers*, 181 N.C. App. 85, 88, 638 S.E.2d 617, 620 (2007) (quotation marks omitted). Here, Emrick does not dispute the validity of the Non-Competition Provision with regard to the first three factors listed above. Rather, Emrick's contentions rest on whether the Non-Competition Provision is reasonable as to both time and territory and whether it is actually designed to protect the legitimate business interests of Eye Dialogue.

24.     The Non-Competition Provision at issue provides, in relevant part, that Emrick is prohibited from "directly or indirectly" owning, managing, operating, consulting with, or being employed in a business "substantially similar to, or competitive with, the present business of [Eye Dialogue]" during Emrick's employment and for a period of two years following his termination. ("Non-Competition Provision," ECF No. 3 at Ex. A.)

25.     "The reasonableness of a non-competition covenant is a matter of law for the court to decide." *Medical Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 655, 670 S.E.2d 321, 327 (2009). Courts carefully scrutinize non-compete agreements because they "are not viewed favorably in modern law." *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 508, 606 S.E.2d 359, 362 (2004) (quoting *Farr Assocs., Inc. v.*

*Baskin*, 138 N.C. App. 276, 279, 530 S.E.2d 878, 881 (2000)) (internal quotation marks omitted). In determining whether a non-compete agreement is, in fact, reasonable, and valid and enforceable, courts must examine the "reasonableness of its time and geographic restrictions, balancing the substantial right of the employee to work with that of the employer to protect its legitimate business interests." *Okuma Am. Corp.*, 181 N.C. App. at 86, 638 S.E.2d at 618.

> To be valid, the restrictions on the employee's future employability by others "must be no wider in scope than is necessary to protect the business of the employer." If a non-compete covenant "is too broad to be a reasonable protection to the employer's business it will not be enforced. The courts will not rewrite a contract if it is too broad but will simply not enforce it."

*VisionAIR, Inc.,* 167 N.C. App. at 508, 606 S.E.2d at 362 (internal citations and quotations omitted).

26. Non-compete agreements that bar an "employee from working in an identical position for a direct competitor" are enforceable in North Carolina. *Okuma Am. Corp.,* 181 N.C. App. at 90–91, 638 S.E.2d at 621 (citing *Precision Walls v. Servie*, 152 N.C. App. 630, 638–39, 568 S.E.2d 267, 273 (2002)); *see also Ridgway,* 194 N.C. App. at 656, 670 S.E.2d at 327. On the other hand, our appellate courts consistently hold non-compete agreements purporting to prohibit a former employee "from having any association with a business providing similar services, including performing even wholly unrelated work" to be over broad and unenforceable. *Andy-Oxy Co., Inc. v. Harris,* No. COA19-10, 2019 N.C. App. LEXIS 902, at *9–10, 834 S.E.2d 195 (N.C. Ct. App. Nov. 5, 2019) (citing *Hartman v. W.H. Odell & Assocs.*, 117 N.C. App. 307, 317,

450 S.E.2d 912, 920 (1994); *VisionAIR*, 167 N.C. App. at 509, 606 S.E.2d at 362); *see also Henley Paper Co. v. McAllister,* 253 N.C. 529, 534–35, 117 S.E.2d 431, 434 (1960).

27.     Recently, the North Carolina Court of Appeals considered a nearly identical non-competition provision in *Andy-Oxy Co., Inc.* The court concluded that the non-compete agreement at issue was over broad and did not protect a legitimate business interest because it provided that the former employee "shall not, directly or indirectly, . . . be employed or otherwise participate in the field or area of supplying, retailing, wholesaling, or distributing . . . any [ ] products sold by the company, within the restricted area[.]" *Andy-Oxy Co., Inc.,* No. COA19-10, 2019 N.C. App. LEXIS 902, at *11–12. The Court held that the "covenant is not limited to a restriction preventing [defendant] from working "in an identical position for a direct competitor[.]" *Id.* at *12 (citing *Ridgway*, 194 N.C. App. at 656, 670 S.E.2d at 327). The Court reasoned that the covenant effectively prohibited the former employee "from having any association with a business in the same field" and was therefore unenforceable under North Carolina law. *Id.* at *12.

28.     In *VisionAIR* the court held that a non-compete provision that stated that the former employee "may not 'own, manage, be employed by or otherwise participate in, directly or indirectly, any business similar to Employer's . . . within the Southeast' for two years after the termination of his employ with VisionAIR" was unenforceable. 167 N.C. App. at 508, 606 S.E.2d at 362. The Court held:

> Under this covenant [defendant] would not merely be
> prevented from engaging in work similar to that which he
> did for VisionAIR at VisionAIR competitors; [defendant]
> would be prevented from doing even wholly unrelated work

at any firm similar to VisionAIR. Further, by preventing [defendant] from even "indirectly" owning any similar firm, [defendant] may, for example, even be prohibited from holding interest in a mutual fund invested in part in a firm engaged in business similar to VisionAIR. Such vast restrictions on [defendant] cannot be enforced.

*Id.* at 508–09, 606 S.E.2d at 362–63 (footnote omitted).

29. The language of the Non-Competition Provision at issue here is indistinguishable from the non-compete agreements struck down as unenforceable in both *Andy-Oxy Co., Inc.* and *VisionAIR.* Such extensive restrictions on Emrick's employment are over broad and unenforceable. Therefore, to the extent Emrick's Motion seeks dismissal of Plaintiff's breach of contract claim based on the terms of the Non-Competition Provision being facially over broad, Emrick's Motion should be GRANTED.

30. The Court, having concluded that the terms of the Non-Competition Provision are unenforceable due to restricting too many activities, need not address whether the geographic and durational restrictions are also overbroad.

ii.    The Non-Disclosure Provision

31. A non-disclosure provision in an employment agreement is enforceable "if it does not seek to prevent a party from engaging in a similar business in competition with the [employer], but instead seeks to prevent the disclosure or use of confidential information." *Chemimetals Processing v. McEneny,* 124 N.C. App. 194, 197, 476 S.E.2d 374, 376 (1996). To be enforceable, such a non-disclosure agreement requires only "a showing that it protects a legitimate business interest of the

[employer]"; time and durational limitations are irrelevant. *Id.* at 197, 476 S.E.2d. at 377.

32. "North Carolina courts will treat a non-disclosure agreement as a contract in restraint of trade in appropriate circumstances." *Amerigas Propane, L.P. v. Coffey*, 2015 NCBC LEXIS 98, at *23 (N.C. Super. Ct. Oct. 15, 2015) (citing *ChemiMetals*, 124 N.C. App. at 197, 476 S.E.2d at 376–77). A non-disclosure provision equates to a restrictive covenant in restraint of trade and is subject to the same analysis as a covenant not to compete if "the anticipated and intended effect of the prohibition on [an employee's] disclosure . . . is not to protect [the company's] confidential business information" but rather to prevent a former employee from competing with the former employer. *See Amerigas Propane, L.P.,* 2015 NCBC LEXIS 98, at *24–25 (compiling cases).

33. Emrick relies almost exclusively on this Court's ruling in *Amerigas* to support his argument that the Non-Disclosure Provision should be struck down as unenforceable along with the Non-Competition Provision. *Amerigas* came before the Court on the defendants' motions for summary judgment. *Id.* 2015 NCBC LEXIS 98, at *1. The Court, with the benefit of being able to analyze a developed record, found that:

> [I]t is undisputed that the identities of AmeriGas customers are often readily ascertainable and can typically be obtained by a cursory, roadside examination of the vendor logo on a homeowner's outdoor propane tank. The same is true concerning the identities of the customers of any competing vendor of propane gas in the area. In these circumstances, the Court concludes that AmeriGas's

customer identities are not confidential in any meaningful sense.

*Id.* 2015 NCBC LEXIS 98, *23–24. The Court concluded that, to the extent the non-disclosure provision sought to prohibit the disclosure of AmeriGas's customer identities, the non-disclosure provision amounted to a restraint on trade. *Id.*

34. The Court, however, also concluded that:

[T]he non-disclosure provision [at issue] also seeks to prohibit the use or disclosure of customer credit information, gas usage patterns, and pricing and marketing information relating to AmeriGas customers. The Court concludes that the purpose and function of the non-disclosure provision to this extent is not to prevent Coffey from soliciting AmeriGas customers, but rather to prevent the use or disclosure of valuable, confidential information of AmeriGas concerning its customers[.]

*Id.* 2015 NCBC LEXIS 98, at *26. Accordingly, the Court found that the non-disclosure provision was enforceable to the extent it sought to prohibit "the use or disclosure of customer credit information, gas usage patterns, and pricing and marketing information." *Id.* 2015 NCBC LEXIS 98, at *26–27.

35. Here, Emrick acknowledges in the Non-Disclosure Provision that Eye Dialogue may provide him with "access to trade secrets, customers and other confidential data and good will. [And Emrick] agrees to retain said information as confidential and not to use said information on his . . . own behalf or disclose same to any third party." (ECF No. 3 at Ex. A.)

36. Emrick argues that the Non-Disclosure Provision is overbroad and unenforceable because: (1) the "categories, 'customers' and 'goodwill,' directly prohibit

[Emrick] from engaging in competitive activities unrelated to the disclosure of any type of confidential information"; and (2) the Non-Disclosure Provision fails to define "trade secrets" or "confidential information." (ECF No. 12, at pp. 10–11.) Emrick contends that the Non-Disclosure Provision "is so broad that it could reasonably be read to include all information provided to [Emrick] during the course of his employment" and, therefore, "constitutes a restraint on trade." (*Id.* at p. 11.)

37. Plaintiff contends that the Non-Disclosure Provision aims to protect "Plaintiff's legitimate business interests[,] proprietary information[,] and trade secrets." (ECF No. 14, at p. 9.) Plaintiff argues that the Complaint sufficiently alleges Emrick misappropriated Eye Dialogue's customer lists, trade secrets, and "his expertise and knowledge of the A/V industry." (*Id.*)

38. At this early stage in litigation, where the Court is bound strictly to the allegations in the pleadings and the documents attached thereto, the Court cannot discern the "anticipated and intended effect" of the Non-Disclosure Provision. *Amerigas Propane, L.P.,* 2015 NCBC LEXIS 98, at *24–25. The Court notes that Plaintiff's allegations regarding Emrick's misappropriation of Eye Dialogue's trade secrets, customer lists, and other proprietary information, are scant and may not carry the day as discovery proceeds. Nevertheless, a more developed record is necessary to determine whether Eye Dialogue's customers are "confidential in any meaningful sense," or if the remainder of the Non-Disclosure provision is intended solely "to prevent the use or disclosure of valuable, confidential information of [Eye Dialogue] concerning its customers." *Id.* 2015 NCBC LEXIS 98, at *24, 26. Therefore,

to the extent Emrick's Motion seeks dismissal of Plaintiff's claim for breach of contract, based on the Non-Disclosure Provision being unenforceable, Emrick's Motion should be DENIED.

**C.    Breach of the Covenant of Good Faith and Fair Dealing**

39.    Under North Carolina law, every enforceable contract contains an underlying, implied covenant of good faith and fair dealing. *Bicycle Transit Auth. v. Bell,* 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985). "A claim for breach of this implied covenant arises when one party 'wrongfully deprives' the other of some benefit 'to which they were entitled,' or takes some other action for a 'wrongful or unconscionable purpose.'" *Wadhwania v. Wake Forest Univ. Baptist Med. Ctr.*, No. COA18-252, 2018 N.C. App. LEXIS 1100, at *8, 821 S.E.2d 309 (N.C. Ct. App. Nov. 20, 2018) (citing *Dull v. Mut. Of Omaha Ins. Co.*, 85 N.C. App. 310, 318, 354 S.E.2d 752, 757 (1987)).  In North Carolina:

> As a general proposition, where a party's claim for breach of the implied covenant of good faith and fair dealing is based upon the same acts as its claim for breach of contract, we treat the former claim as "part and parcel" of the latter. *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 19, 472 S.E.2d 358, 368 (1996), *disc. review denied*, 345 N.C. 344, 483 S.E.2d 173 (1997); *see Suntrust Bank v. Bryant/Sutphin Props., LLC*, 222 N.C. App. 821, 833, 732 S.E.2d 594, 603 ("As the jury determined that plaintiff did not breach any of its contracts with defendants, it would be illogical for this Court to conclude that plaintiff somehow breached implied terms of the same contracts."), *disc. review denied*, 366 N.C. 417, 735 S.E.2d 180 (2012).

*Cordaro v. Harrington Bank, FSB,* 260 N.C. App. 26, 38–39, 817 S.E.2d 247, 256 (2018).  In other words, if a plaintiff brings a breach of contract claim and a claim for

breach of the covenant of good faith and fair dealing based on the same facts, the two causes of action are treated as one and the same.

40. Here, Plaintiff alleges that "[a]n implied term of the [Non-Compete] was a duty for Defendant Emrick to act in good faith and fair dealing when carrying out his duties and obligations under the [Non-Compete.]" (ECF No. 3, at ¶ 141.) Accordingly, Plaintiff's breach of the covenant of good faith and fair dealing claim is supported by the same factual underpinnings as its breach of contract claim. The Court has already determined that, to the extent Plaintiff's breach of contract claim is based on the Non-Competition Provision, Plaintiff's breach of contract claim should be dismissed. Therefore, to the extent Emerick's Motion seeks dismissal of Plaintiff's claim for breach of the covenant of good faith and fair dealing, based on Emrick's breach of the Non-Competition Provision, Emrick's Motion should be GRANTED.

41. However, the Court has also concluded that, to the extent Plaintiff alleges its breach of contract claim is based on Emrick's alleged breach of the Non-Disclosure Provision, Plaintiff's breach of contract claim should not be dismissed. Accordingly, to the extent Plaintiff's claim for breach of the covenant of good faith and fair dealing is based on Emrick's breach of the Non-Disclosure Provision, Plaintiff's claim for breach of the covenant of good faith and fair dealing should likewise withstand dismissal at this stage. Therefore, to the extent Emrick's Motion seeks dismissal of Plaintiff's claim for breach of the covenant of good faith and fair dealing, based on Emrick's breach of the Non-Disclosure Provision, Emrick's Motion should be DENIED.

## IV.    CONCLUSION

THEREFORE, IT IS ORDERED that the Motion is GRANTED, in part, and DENIED, in part, as follows:

1. To the extent Emrick's Motion seeks dismissal of Plaintiff's Twelfth Claim, based on the terms of the Non-Competition Provision being facially over broad, Emrick's Motion is GRANTED.

2. To the extent Emrick's Motion seeks dismissal of Plaintiff's Twelfth claim based on the Non-Disclosure Provision being unenforceable, Emrick's Motion is DENIED.

SO ORDERED, this the 28th day of July, 2020.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases